10258

WILLIAMS v. PHILADELPHIA LIFE INS. CO. ET AL.

(100 S. E. 157.)

1. INSURANCE—INSURER NOT LIABLE ON POLICY OF WHICH INSURED HAD
   NO KNOWLEDGE.—If insurer sent general agent a policy essentially
   different from that for which insured had applied, and if insured at
   no time had knowledge thereof or assented thereto, insurer is not
   liable thereon, though policy had not been canceled at time of
   ·insured's death.

2. INSURANCE—WHAT CONSTITUTES DELIVERY OF POLICY TO INSURED.—
   Generally, when an insurance company sends a policy the contents
   of which is known to, and assented to, by the insured, to the com-
   pany's general agent for delivery to the insured, then delivery is
   effected, and the contract of insurance is of force.

3. EVIDENCE—COLLATERAL AGREEMENT WITH AGENT. AS TO PREMIUM OF
   POLICY INADMISSIBLE.—Where application provided that all "agree-
   ·ments made by or with the company or the agent taking this appli-
   cation are reduced to writing and made a part of the application,"
   evidence of agreement between general agent and insured's husband,
   a special agent, that initial premium should be paid by a bonus to
   be earned by husband as agent, held incompetent in action on the
   policy, where such agreement was not made part of application.

4. INSURANCE—PREPAYMENT OF FIRST PREMIUM MAY BE WAIVED.—
   Parties to insurance contract may waive that part of contract requir-
   ing prepayment of initial premium before insurance shall take effect.

5. INSURANCE—RECITAL OF PAYMENT OF FIRST PREMIUM PRESUMED
   TRUE.—Where policy reciting payment of first premium was sent to
   general agent for delivery, first premium will be presumed to have
   been paid.

6. INSURANCE—WAIVER MAY ARISE BY IMPLICATION.—Waiver often rests
   in a subtle operation of mind and speech; it may arise by expression,
   but more often by implication.

7. INSURANCE—WHEN WAIVER OF PAYMENT OF FIRST PREMIUM MAY BE
   INFERRED.—If insurer, with a right to payment of first premium
   before taking effect of insurance, shall make any speech or perform
   any act from which a reasonable inference may be drawn that the
   insurer does not stand upon its rights, then waiver may be inferred.

8. INSURANCE—WHERE DEFENSE WAS NO CONTRACT, MEANING OF LETTER
   OF INSURER FOR JURY.—In action on life policy, where defense was
   that no contract of insurance was ever entered into between the
   parties, the meaning of a letter from insurer to insurer held for jury.

Before Prince, J., Lancaster, Spring term, 1918. Order of nonsuit set aside and new trial granted.

Action by H. F. Williams, as administrator of the estate of Margaret E. Williams, deceased, against the Philadelphia Life Insurance Company and others. Judgment of nonsuit, and plaintiff appeals.

Following is the statement of facts referred to in opinion:

The defendant is a Pennsylvania corporation, in the business of insuring lives; the Gordon Investment Company is a corporation under the laws of North Carolina, in the business of selling life insurance; the plaintiff was husband to Margaret, and was, at the time in issue, an agent of the defendant company, duly constituted by writing to canvass for applications for life insurance in York county, and also, by his testimony, agent for the Gordon Company; and one Gordon was president of the Gordon Company.

On 22d December, 1910, Margaret made application to the defendant, through H. T. Williams, printed as "Agent" on the application blank, and the Gordon Company, printed as "General Agent" on the application blank, "for $5,000 insurance on the 20-year term plan, annual premium $40.25, payable semiannually;" that application was written into a detached printed form, six by eight inches in size, which, for identification, may be called part 1, though not so marked.

This part 1 is in these words:

"I, Margaret E. Williams, hereby make application to the Philadelphia Life Insurance Company for $5,000 insurance on the 20 yr. term plan; annual premium $40.25, payable semiannually. I was born on the 12th day of April, 1876. Age nearest birthdy 34 years.

"Residence, Yorkville, S. C. Place of business, Yorkville, S. C. (No.) (Street) (City) (State). Premium notices to be sent to Yorkville, S. C. My occupation

is housewife. (State kind of business.) Beneficiary, estate. Dividends to be paid to assured at the end of each year.

"I have this —— day of —— given to ——, Agent, the sum of $——, to be used in payment of the first —— annual premium on policy when issued by the company in accordance with this application, and I hereby ·agree to be examined forthwith by an authorized medical examiner of the company, and to accept the policy when issued. I hereby agree that all representations and agreements made by or with the company or the agent taking this application are reduced to writing herein and made a part of this application and the policy issued hereunder. Dated at Yorkville, S. C., this 22d day of December, 1910. Witness: H. T. Williams, Agent. Margaret E. Williams. General Agent, Gordon Insurance & Inv. Co."

Upon the face of the original of part 1 is rubber stamped the numerals "18090," and upon the back of it is rubber stamped "James H. Perry, General Agent, 27 Dec., 1910." Detached from this application paper, but a part with it, is a large sheet of paper printed on the back "Application Part 2," which embodies (1) the declaration of the applicant made to the company's medical examiner, and (2) the declaration of the medical examiner. The concluding sentence of part 1 are those words already set out in it; and at the end of the applicant's declaration in part 2 are these words:

"I hereby agree, for myself and all parties who may have an interest herein, that all the foregoing statements and answers and those made to the medical examiner are true and complete, and are offered to the company as a consideration for the contract which I hereby agree to accept; that no other information or answer than is herein contained, whether known to, made by, or given to any person, shall be considered as a part of the contract; that should this policy become a claim during its first year, nothing herein shall prevent the company from introducing any information as

evidence of fraud; that the policy granted herefor shall not take effect until issued, delivered, and the premium paid thereon to the company or to an agent holding the premium receipt from the company during my lifetime and while in good health."

One of the applicant's answers is that the premiums were to be paid by the husband, H. T. Williams.

This application, part 2, has rubber stamped on the face of it "Dec. 27, R. E. G.," and on the folded back of it is the same number, "18090," and on the folded face there was indorsed, as "at the office of the company," the following:

"Name, Margaret E. Williams. No. 18090. Age, 35. Amount $2,000. ½ annual premium, $52.56. Policy date, December 28, 1910. From 321-6-09. Kind, 20 E. A. S. 20. Beneficiary, estate. G. A., J. H. Perry. Agent, Gordon Ins. & Inv. Co. H. T. Williams."

And on the folded back there is indorsed the following:

"Approved, December 30, 1910. For $5,000.00 only. Fairly good family history. T. Hewson Bradford, Medical Director." Approved: "20 E. A. S. 20. $2,000.00. 12/30/10. E. B."

So much for the applications and the writings in and upon the same.

There was put in evidence a 20-year endowment accumulated surplus policy of insurance, signed by the defendant, No. 18090, dated 28th December, 1910, for $2,000, to Margaret E. Williams, the annual premium for which is $101.06, payable semiannually in equal parts.

Pasted within this policy's sheets is a photographic copy of the declarations of Margaret, made to the medical examiner, and the examiner's declarations, before referred to in an application, part 2, for a $5,000 policy.

And on the back of this policy there purports to be a "Copy of Application." No original was proven, but the same is a modified copy of the application for $5,000 insurance, before referred to; for it is a literal copy thereof,

save in these particulars, to wit: The original is for $5,000; the copy is for $2,000. The original states nearest birthday to be 34 years; the copy states nearest birthday to be 35 years. The original is for 20-year term plan, premium $40.25; the copy is for 20 end A. S. plan, premium $101.06. The original calls for payment of dividends at the end of each year; the copy calls for payment of dividends at the end of 20 years.

On the top margin of the third page of the policy in pen script is this significant admission, to wit:

"At the request of the insured the premiums hereon are changed to semiannual installments of fifty-two 56/100 dollars each, payable on the 28th day of December and June of each year hereafter during the premium paying period of this policy. Philadelphia, Dec. 31, 1910. William H. Hubbard, Secretary."

This policy for $2,000 was never put into the hands of Margaret or her husband. Thereabout the defendants' actuary wrote a letter, dated 13th April, 1911, to H. T. Williams, after Mrs. Williams' death, as follows:

"Philadelphia Life Insurance Company, Home Office, North American Building, Philadelphia, April 13, 1911. Ernest M. Blehl, Actuary. Mr. H. T. Williams, Yorkville, S. C.: Dear Sir: *In re* Policy No. 18090—M. E. Williams.

"In reply to your telegram of today, I beg to state that your application for a policy on this life was on twenty-year term plan, and same for several reasons would not be approved. We did, however, issue a contract in January, on twenty-year endowment, accumulated surplus plan, and forwarded it to the Gordon Insurance & Investment Company for delivery, but same was returned to this office for cancellation, as not taken.

"If you desire the policy revived on twenty-year endowment, accumulated surplus plan, please advise."

There is no mark of cancellation on the policy. Margaret died in March, 1911, of an operation.

No premium was actually paid to the defendant, though the plaintiff would have made payment had he the opportunity to do so; for payment, the husband relied on that answer in the application which made him the payer of the premiums; and upon his parol contract with the Gordon Company (printed in the application blank as general agent of the defendant), which contract, when performed, constituted the defendant his debtor by way of a bonus to the amount of $125, for writing an aggregate of $50,000 insurance.

*Messrs. Williams & Williams & Stewart* and *Jones & Jones,* for appellant, submit: *The facts of this case are wholly different from the facts in 107 S. C. 536. As to competency of oral testimony in support of a collateral agreement in harmony with written contract:* 26 S. C. 305 72 S. C. 362; 61 S. C. 166; 220 Pa. 285; 18 L. R. A. (N. S.) 434; (N. C.) 54 S. E. Rep. 847. *As to construction more favorable to insured:* 96 S. C. 50; 96 S. C. 431. *As to prevention of forfeiture:* L. R. A. 1918d, 1909; 23 L. R. A. 304; 90 S. C. 1. *As to waiver or estoppel:* 74 S. C. 250; 88 S. C. 31. *As to custom and usage:* 12 Cyc. 1081-1082; 2 Hill 353. *As to testimony being on witness' own knowledge:* 74 S. C. 25. *As to respondent's additional grounds to support nonsuit:* 78 S. C. 127; 107 S. C. 369. *As to the case as a whole:* 104 S. C. 501; 34 Sup. Rep. 612. *As to duty of insurer to give notice, etc.:* 40 L. R. A. (N. S.) 164; 46 L. R. A. (N. S.) 25; 11 Cowan 69; Ann. Cases 1916b, 674.

*Messrs. Wilson & Wilson, Claude N. Sapp* and *Stack & Parker,* for respondent, submit: *Too late for plaintiff to change his contention after the case has reached this Court:* 87 S. C. 87; 68 S. E. 1041; 97 S. C. 278; 78 S. E. 536; 89 S. C. 328; 71 S. E. 849; 94 S. C. 125; 77 S. E. 722; 100 S. C. 138; 84 S. E. 420; 92 S. E. 1029. *No contract consummated:* 77 S. C. 187; 57 S. E. 766; 14 R. C. L. 894; 61

Ala. 163; (Ky.) 92 S. W. 325; 15 L. R. A. (N. S.) 739, and note; 101 U. S. 343; 14 R. C. L. 895, note; 9 Ann. Cases 221-223; 4 Wheaton 228; 23 Wallace 85; 55 C. C. A. 675; 115 Fed. 81; 93 S. W. 659. *As to no constructive delivery:* 89 S. E. (S. C.) 676-677; 30 S. E. 275; 42 L. R. A. 90; 36 Fed. 118; 115 Fed. 486; 149 Fed. 141; 132 Mich. 695; 94 N. W. 211; Cases cited under heading 1 above; 144 N. C. 663; 57 S. E. 437; 64 N. C. 743; 113 N. C. 570; 18 S. E. 392; 37 Am. St. Rep. 632; 94 U. S. 621; 24 L. Ed. 298; 27 N. J. Law 645; 72 Am. Dec. 379; 17 Minn. 153 (Gil.), 127; 10 Am. Rep. 154; Vance on Ins. 160; Bliss on Ins. 210-215; 116 Ala. 659; 32 South 903; 67 Am. St. Rep. 154; 104 Ga. 67; 30 S. E. 273; 42 L. R. A. 88; 69 Am. St. Rep. 134; Joyce on Insurance 91, 92, 93, and note; 138 N. C. 379; 50 S. E. 762; 107 Am. St. Rep. 548; 132 N. C. 542; 44 S. E. 28; 32 Tex. Civ. App. 146; 73 S. W. 878; 93 S. E. (S. C.) 197; 28 Fed. Rep. 705; 99 Rep. 856; 40 C. C. A. 119 (reversed on other grounds); 183 U. S. 25; 23 U. S. Sup. Ct. Rep. 10; 101 Mass. 279; 121 Mass. 338; 50 Neb. 818; 70 N. W. Rep. 386; 55 N. J. L. 187; 26 Atl. 78; 18 W. Va. 782; 70 Iowa 390; 30 N. W. Rep. 647; 27 Pa. 268; 133 Fed. Rep. 907; 62 C. C. A. 497; 92 Iowa 593; 61 N. W. Rep. 201; 6 Bush. (Ky.) 450; 30 Mo. 46; 148 Mo. 493; 50 S. W. Rep. 519; 108 Mo. App. 61; 82 S. W. Rep. 966; 68 N. Y. 434; 72 Ohio St. 174; 73 N. E. Rep. 1056; 71 N. C. 480 (S. Dakota 1905); N. W. Rep. 1040; 31 Gratt (Va.) 362; 43 Wash. 398; 86 Pa. 656; 91 Wis. 121; 64 N. W. Rep. 876; 153 Mass. 335; 26 N. E. Rep. 377; 11 Paige (N. Y.) 547; note 9 Ann. Cases, pp. 223-225; 131 Ga. 38; 61 S. E. 1123; (Ind. 1905) 73 N. E. Rep.1041; 96 N. C. 158; 1 S. E. 797; 126 N. C. 167; (Ga.) 93 S. E. 299; 187 S. W. 265; 148 Fed. 358. *No duty owing by defendant or its agents to issue a policy to plaintiff's intestate or to notify her that company offered to issue a policy different from kind appealed for, or to tender such policy for acceptance:* Addison on Torts,

sec. 28; 38 Cyc. 426-427; 223 U. S. 389; 94 S. C. 374; 115 Fed. 81 (1902); 23 Wall. 85; 102 U. S. 108; 72 N. W. 503; 51 Ia. 680; 2 N. W. 583; 61 Iowa 215; 16 N. W. 94; 71 Iowa 340; 32 N. W. 371; 130 N. Y. 337; 29 N. E. 757; 23 Pa. St. 72; 119 Pa. St. 6; 12 Atl. 607; 78 Va. 700; 53 Ill. 516; 49 Md. 307; 17 Minn. 153; 1 Beach Ins. 499; 2 May Ins. 508. *Cases of plaintiff not in point:* 11 Hawaiian R. 69-79; 86 Kan. 442, and (Iowa); 139 N. W. 1087; 145 Ky. 563. *No damage shown:* 21 A. & E. Encyc., 2d Ed. 498; Sutherland on Damages, 4th Ed., vol. III, p. 3659; 52 W. Va. 410; 44 S. E. 309; 123 Ga. 216; 51 S. E. 290; 65 S. C. 490; 43 S. E. 959; 124 U. S. 444; 137 N. C. 513; 143 N. C. 376; 77 S. C. 187; 57 S. E. 766. *Action does not survive:* 71 S. C. 98; 21 Ency. of Pleading and Practice 325; 40 S. C. 393; 18 S. E. 929; 58 S. C. 240; 36 S. E. 586; Civil Code of 1912, sec. 3963; 40 S. C. 393; 18 S. E. 929; 58 S. C. 240; 36 S. E. 586; 115 Mass. 552; 217 Ill. 381 (1905); 82 Mich. 382; 94 Va. 737; 215 Mass. 557. *As to exclusion of opinion evidence:* Code of Civil Procedure, sec. 438; 52 W. Va. 410; 44 S. E. 509; 123 Ga. 216; 51 S. E. 290; 65 S. C. 490; 106 S. C. 433. *Terms of application cannot be varied by evidence of conversations with agents:* 77 S. C. 187; 57 S. E. 766; 107 S. C. 536; 93 S. E. 197.

August 25, 1919.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Let the statement of facts appended hereto be reported with the opinion.

The major and decisive issue in the case is one of law, and it is this: Did the testimony tend to prove a contract of life insurance betwixt the parties?

We are of the opinion that the written testimony tended to prove such a contract, and that, therefore, the order of

nonsuit ought not to have been ordered, the second nonsuit now granted·in this cause.    105 S. C. 305, 89 S. E. 675.

Beyond question a policy for $2,000 was written on the life of Mrs. Williams by the defendant, and was sent from Philadelphia to Monroe, N. C., to the Gordon Insurance & Investment Company (hereinafter called the Gordon Company), described on the application blank as the "general agent" of the defendant, for delivery to Mrs. Williams. So far, therefore, as the defendant company's part in the contract is concerned, it was fully intended to be performed and was performed.

The original policy was before the trial Court and before us, and it is uncanceled.

The prime argument of the defendants' counsel at the trial was thus expressed by him:

"Mr. Parker: Your Honor, we produce this policy as the policy which was sent to the Gordon Insurance Company. We propose to deny that it is a binding contract."

The major argument at that time and now is that the company is not bound by the policy, because Mrs. Williams was not bound, and that she was not bound because she had never applied for a policy of that character, but for a policy for $5,000 of an essentially different character, and that she never knew of and never assented to the $2,000 policy which the company wrote.

That postulate of law is based on the case of Insurance Co. v. Young, 23 Wall. 105, 23 L. Ed. 152, decided in 1874 and it is, of course, sound ·if the facts are right.

But in the instant case there is written in pen script, on a margin of the $2,000 policy, by one of its chief officers, the man who signed the policy, that which tends· to prove an admission by the company that Mrs. Williams knew of, and assented to, the $2,000 policy. The writing is set out in the statement of facts, but is here repeated.    It reads:

"At the request of the insured the premiums hereon are changed to semiannual installments of fifty-two and 50/100 dollars, each, payable on the twenty-eighth day of December and June in each year hereafter during the premium paying period of this policy.    Philadelphia, December 31, 1910. Wm. H. Hubbard, Secretary."

Thereby the secretary of the company declared that the insured requested the premiums "hereon"—that is to say, on the instant policy—should be paid semiannually, and the there stated premiums were those chargeable on policies of the character on the instant $2,000 policy, and not those chargeable on the $5,000 policy.

It is irrelevant to inquire how Mrs. Williams got that knowledge, for the defendant declares in writing that she had it.    The case does not show that this significant declaration of the company was even called to the trial Court's attention.    And the letter of the company's actuary to H. T. Williams (set out in the statement of facts) tends to show that the $2,000 policy was forwarded by the company to its general agent at Monroe, N. C., the Gordon Company, for delivery to the insured.    The defendant did all it could to make and to deliver a contract of insurance.

There will be no question about the truth of the following postulate, that generally, when an insurance company sends a policy the contents of which is known to and assented to by the insured, to the company's general agent for delivery to the insured, then delivery is effected, and the contract of insurance is of force.    The defendant admits so much in the argument.    See opinion in the former appeal, cited *supra*.

The other exceptions become irrelevant, save that which refers to payment of the initial premium.    The Court did not rule upon that issue, though it was made; but an exception goes to the exclusion of testimony offered by the plaintiff to prove payment, and a sustaining ground goes to an

absence of proof of payment to sustain the nonsuit. We shall, therefore, consider the question of payment to guide the Court on the new trial, for the issue must arise there, and the cause has already been tried on the Circuit many times.

There is no pretense by the plaintiff that the initial premium was paid in money or its equivalent by the applicant, or by anybody for her in the company's hands, or into the hands of anybody acting for it.

The only contention of the plaintiff is that the defendant company, by and through its general agent, the Gordon Company, agreed by parol with H. T. Williams, the agent of the company, to sell insurance, and the husband of the applicant and by the words of the application constituted the payer of the premiums, that the initial premium should be paid by a bonus to be earned by H. T. Williams as selling agent for the company.

The defendant denies that any such contract was made, and it contends that, if made, the proof of it is cut off by two clauses in the applications, part 1 and part 2, set out in the statement of facts.

Reverting to these clauses, that in part 2 of the application has no relevancy to the present issue; it expressly refers to statements and answers touching the applicant's health and habits.

That clause found in part 1 of the application needs, therefore, only to be considered; it is short, and we repeat it here. It is:

"I hereby agree (1) that all representations and agreements (2) made by or with the company (3) or the agent taking this application (4) are reduced to writing and (5) made a part of this application (6) and the policy issued hereunder."

The numerals are supplied.

Plainly, the agreement of H. T. Williams with the Gordon Company, to which H. T. Williams offered to testify, was not so reduced to writing and made a part of the application.    For that reason it is incompetent, and the Court was right to exclude it.

Nevertheless, the Court ought not to have ordered a nonsuit (1) upon the ground that there is no testimony tending to show that the initial premium had been paid; or (2) upon the ground that there was no testimony tending to prove that the company had waived so much of the contract of insurance as prescribed a prepayment of the initial premium.

The written agreement of the parties, it is true, was that the policy should not take effect until the premium thereon was paid.

But payment may be effected by many mediums; and the parties may forego that part of the contract which prescribes prepayment by a waiver of it.

The policy recites payment of the premium, and it was sent to the general agent for delivery.    So much raises the presumption that the premium was paid.

It is true that waiver is defined to be the voluntary relinquishment of a known right; but it often rests in a subtle operation of mind and speech.    It may arise by expression, but more often by implication.

If the company, who had a right under the contract, especially a right like the instant one, shall make any speech or perform any act from which a reasonable inference may be drawn that the company does not stand upon its right, then waiver may be inferred.

In the case at bar the letter of the 13th April, 1911, before set out in the statement of facts, was a declaration by the company which has at least a doubtful meaning.    It should have been left to a jury to find if the company thereby meant that the delivery therein referred to should depend upon a prepayment of the premium,

and if the policy was returned for nonpayment, or because it was declined by the applicant, or for any other reason, and whether the "revival" therein referred to meant the revival of a policy always dead, or one which was once alive, but which afterwards became dormant.

The order of nonsuit is set aside and a new trial is ordered.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES HYDRICK and WATTS concur.

MR. JUSTICE FRASER. I dissent. If it be true that the insured was willing to take a different kind of policy from that originally applied for, had expressed her willingness to do so, and that the general agent had the authority to waive the payment of the initial premium in cash, and to substitute therefor a parol agreement to look to future unearned profits for the payment of the initial premium, still the record shows that the agent of the deceased, who was authorized to make the payment, did not do so, but took for his own use the profits when earned, and thereby failed to carry out the agreement on behalf of the insured.