12955

GALPHIN v. PIONEER LIFE INSURANCE CO.

(154 S. E., 855)

*Messrs. Mann & Plyler* and *Park & McDonald,* for appellant,

*Messrs. W. H. Nicholson* and *Mays & Featherstone,* for respondent,

July 25, 1930.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action to recover disability benefits under an insurance policy issued to the plaintiff by the defendant company. The policy was for $5,000.00 and contained a disability clause providing for the payment to the plaintiff of $10 per month for each $1,000 of insurance in case of his total and permanent disability.

The complaint is in the usual form. The plaintiff, after setting out the above-mentioned facts, alleged that, subsequently to the issuance of the policy, he became totally and permanently disabled as contemplated by its provisions; that thereafter he made demand upon the company for the payment of the monthly benefits of $50.00, but that payment was refused.

The defendant pleaded a general denial, and, in addition, set up several special defenses. It was alleged that the policy contained the express provision that it should not become of force unless it was delivered to the plaintiff and the first premium paid by the insured while in good health; that this provision was violated, in that the premium was paid and the policy delivered while the insured was in bad health, he having suffered a stroke of paralysis theretofore. It was further pleaded that before the policy was left in the possession of the plaintiff, the time for its delivery having elapsed, the company required the insured to furnish a health certificate as to his physical condition; that he did at that time make such certificate, in which he stated that he had had no sickness, except biliousness, since making the original application for the insurance; that this statement was false, in that the insured had theretofore suffered a stroke of paralysis and had been confined to his bed for a considerable time under the care of a physician; and that such misrepresentation was a fraud upon the defendant and relieved it from all liability under the terms of the policy. It was also alleged that the policy was surrendered and canceled on March 8, 1927, by mutual agreement of the parties, in consideration of the return to the plaintiff of all premiums paid

by him, amounting to $297.74; and that the plaintiff executed a release, surrendered the policy, and accepted and retained the refunded premiums as consideration therefor.

The case was tried in the Court of Common Pleas for Greenwood County before Judge Rice and a jury. Motions for a nonsuit and for a directed verdict were made and refused. A verdict was found for the plaintiff, and, from judgment entered thereon, the defendant appeals.

There are a number of exceptions, but the assignments of error may be considered under three general heads: (1) Error in admission of testimony; (2) error in the Court's charge to the jury; and (3) error in refusing defendant's motion for a directed verdict. We will consider these in order.

The testimony shows that the insured was a well-known citizen of the Town of Ninety Six, and apparently was on the best of terms with the company's agent, De Vore, who persuaded him, he says, to drop his insurance in the Pacific Mutual Company and to take insurance with the defendant. On May 28, 1925, respondent made application to the defendant for a policy of insurance in the sum of $5,000.00. On July 20, he amended his application by requesting that an additional policy in the sum of $3,000.00 be issued on the same plan; and the company isued both policies. There is no contest about the $3,000.00 policy, and it is not involved in this appeal.

The $5,000.00 policy, dated July 15, 1925, contained the following provision as to the payment of premiums: "This policy shall not take effect until the first premium shall have been paid while the insured is in good health." As to disability benefits, it provided: "If, before attaining the age of sixty years and while this policy is in full force and there is no default in payment of premiums thereunder, the insured shall become totally and permanently disabled by bodily injury or disease so that he is and will be permanently continuously and wholly prevented thereby from perform-

ing any work or performing the duties of any occupation for renumeration or profit, then upon receipt of due proof while this policy is in full force, that such total disability exists and has existed continuously for a period of not less than thirteen weeks, the company will waive payment of further premiums falling due hereunder during the term of such disability, and will pay to the insured during the term of such disability following the first thirteen weeks a monthly income of ten dollars for each one thousand dollars of face amount of this policy. The first payment of such monthly income shall be made as of the date of receipt of such proof. The continuous existence of total disability for a period of thirteen consecutive weeks will be regarded by the company as presumptive evidence of the permanence of such disability."

The plaintiff testified that when the policy was delivered to him in July, he did not *actually* pay the premium in cash, but had an agreement with the agent of the company to keep the policy in good standing until the insured started to gin in the fall, at which time he would pay, it appearing that the plaintiff was engaged in the business of ginning cotton. The appellant complains that the admission of this testimony was error, for the reason that it tended to vary the terms of the written contract, which provided that the policy should not go into effect until the initial premium was actually paid; and for the further reason that the parol agreement was void under the statute of frauds (Civ. Code 1922, § 5517), in that it was for the purchase of a contract of insurance for the value of more than $50.00.

The exceptions raising these questions are without merit. The provision in the policy relied on by the appellant was written into it by the company for its own benefit, and the condition named may be waived by it or its agent. 37 C. J., 406. As held by the Court in *Williams v. Insurance Company,* 112 S. C., 436, 100 S. E., 157, 160: "Payment may be effected by many mediums; and the parties

may forego that part of the contract which prescribes pre-payment by waiver of it." There was evidence that the policy was delivered in July by the local agent, and that credit was extended the insured for payment of the initial premium. As the agent had authority to deliver the policy and collect the premium, he possessed the implied authority to vary the mode and time of payment. With regard to the contention that the agreement violated the statute of frauds, it is only necessary to say that, if the policy was delivered at the time of the alleged oral agreement—and the respondent so testified and the jury so found—such delivery removed the transaction from the operation of the statute.

When the plaintiff introduced the policy in evidence, he did not offer the paper called the supplemental application, claimed by appellant to have been made by the insured on September 14. The appellant complains that the Court erred in not requiring him to do so, for the reason that such application was a part of the policy. Even if we should concede—as we do not, under the conflicting evidence as to the delivery of the policy—that this paper was a part of the policy, failure to introduce it at the time the policy was offered did no harm to the defendant, as it was later received in evidence and the plaintiff was cross-examined concerning it.

The plaintiff was also questioned about what happened at the time the representatives of the company saw him in March, 1927, for the purpose of having him sign a release and surrender the policy. He testified that the policy was read to him in part, and that he was told that it was not good, and that, unless he surrendered it, the company would take legal action to procure it, and that the representatives of the company would not make a favorable report as to the disability benefits under the $3,000.00 policy.

The appellant's contention is that this testimony of Galphin was directed to an attack on the release as being fraud-

ulent or procured by overpersuasion, and that it was not subject to such attack without some allegation of support. It appears to be a well-established practice, however, that the plaintiff is not required to anticipate the defense of a release which he knows is outstanding, but which he deems invalid; he may plead his cause of action without reference to it in the complaint. The defendant may set up the release in its answer as a defense and may then exercise its right to move the Court for an order to require the plaintiff to reply to that portion of the answer; but, should it fail to procure such order, the plaintiff would have the right to offer evidence in denial or avoidance of the release, although he has filed no reply. See *Levister v. Railway Company*, 56 S. C., 508, 35 S. E., 207; *McDowell v. Railway Company*, 113 S. C., 399, 102 S. E., 639, 34 Cyc., 1068-1094.

It is admitted that a release of liability for tort may be attacked collaterally; but the appellant argues that, where the relationship between the parties is contractual, the rule does not apply. We can see no reason, however, why it should not apply equally in one case as in the other. The release itself is a contract, and the attack is against such contract in both cases. But even if there was error as contended by the appellant, it appears to have been harmless. for the reason that the plaintiff had, before the bringing of his suit, repudiated the release and tendered a return of the refunded premiums, which were the consideration for its execution. We think, however, that the procedure followed in the case was proper, and that evidence was admissible as tending to show that the release had been obtained from the insured without a full knowledge or understanding on his part of his rights in the premises.

When Dr. Woods was on the stand, the Court, over objection of the defendant, admitted in evidence a letter which the doctor had written the insurance company on March 3, 1927, stating his opinion of Galphin's

condition at that time. The appellant complains that this was error, for the reason that Dr. Woods was then testifying, "and it was improper to show the plaintiff's physical and mental condition by the contents of this letter, and it was hearsay." We do not think there is any merit in the contention. Dr. Woods was the physician of the insurance company at Ninety Six, and had also attended the insured and had observed his condition very closely. The letter in question was written by him to the company after the insured had applied for the disability benefits under the policy; and, as held by the trial Judge, it was competent on the ground that it was notice to the company of the mental and physical condition of the insured. In addition, if there was error, it was harmless, for the reason that the witness testified that his opinion of Galphin's condition was still the same as stated in his letter.

The appellant excepts also to certain portions of the ▮▮▮ Court's charge. The jury was instructed that it was not disputed that the insured was in bad health on September 14, and, if the policy was delivered to him on that date, then it was void, unless the agent knew of his sickness, in which case his knowledge would be imputed to the company. The appellant complains that this was error, for the reason that "knowledge of the agent of the fact that the plaintiff had at that time suffered a stroke of paralysis would not be imputed to the company in that it would be a fraud upon the company for the benefit of the insured of which he ought not to be allowed to take advantage." In disposing of the exception raising this question, we call attention to the recent case of *Ayers v. Insurance Company,* 148 S. C., 355, 146 S. E., 147, and authorities cited in the opinion. The principle is well established that the insurer is bound by the acts of its agent acting within the scope of his authority, even though the agent is actuated by a fraudulent intent; and that the rights of the insured are not affected thereby unless he participated in the fraud. In the case

at bar, there was no testimony that the insured was a party to a fraud in the delivery of the policy on September 14, if it was delivered on that date, which was a question in dispute. Under the issues made by the evidence, the charge was a correct statement of the law applicable.

Exceptions 11, 12, 13, 14, and 16 have been disposed of by what we have already said. The instructions complained of by these exceptions were correct statements of the principles of law applicable and governing, and were as favorable to the defendant as it had a right to expect or demand.

The following charge is also made an assignment of error: "Their next defense is as to the cancellation of the policy. Did Galphin at the time that he signed this cancellation and accepted the premiums with interest—and there is no dispute that the premiums were paid to him with interest—did he have mind enough to realize what he was doing? If he didn't have mind enough to realize what he was doing, and if he was giving up valuable rights, then this release or cancellation couldn't stand against him." Under the issues of fact made by the testimony, this was a correct charge of the law applicable. The appellant is in error in asserting that there was no testimony tending to support the respondent's claim as to his lack of mental capacity at the time the release was executed. Not only his own testimony, but the testimony of the physician who had examined and attended him, tended to establish the contention that he did not know just what his rights were at that time; and the Court properly submitted the question to the jury under appropriate instructions. When the charge is considered as a whole, as it should be, we find no error in any of the instructions as complained of.

The grounds of alleged error in overruling the motion for a directed verdict may be thus summarized: (1) That there was no legal delivery of the policy to the insured; (2) that the action was based on a contract which had been canceled; (3) that there was no competent testimony to show that the

cancellation was procured by fraud or deceit; (4) that the testimony shows that the disability complained of was suffered prior to the delivery of the policy and the payment of the first premium; (5) that the application for reinstatement of the policy was made after the insured had suffered a stroke of paralysis, and all negotiations had prior thereto were merged therein; and (6) there was no competent testimony that the insured did not know what he was doing when he executed the release.

It will be observed that in our consideration of alleged error in the admission of evidence and in the Court's charge, we necessarily examined and passed upon some of the testimony in the case. Our further examination of it convinces us that the Court could not have directed a verdict for the defendant, for the reason that the plaintiff offered testimony tending to support his contentions on all material points. For instance, the appellant contends that the date of the delivery of the policy was September 14, after the insured had been stricken with paralysis; the respondent testified positively that the policy was delivered to him in July, while he was in good health. Also, while the agent of the company claimed that no agreement had been made between him and the insured as to an extension of credit for the payment of the initial premium the respondent testified positively that such an arrangement was made. With regard to the health certificate, while the claim of the appellant was to the effect that the insured knew what he was doing at the time he made it, the respondent testified that if he did sign such a certificate his mind at the time was in such condition that he did not know what he was doing. There was also testimony of the two physicians tending to show that respondent's mind at the time was bad, and that he was unfit for business. With regard to the execution of the release on March 8, 1927, after the respondent had made application for disability benefits under the policy, there was testimony offered for the appellant to

the effect that at the time the respondent appeared to be normal. But the respondent testified that he knew nothing about the release; that, while his name signed to the paper appeared to have been written by him, still his mind was in such condition at the time it is claimed the release was executed that he had no recollection of signing it; and that, if he did sign it, he was not aware of what he was doing. There was also testimony tending to corroborate this statement of the insured given by one of the physicians who had attended him. It is thus seen that the evidence was in sharp conflict on all material questions, and the Court would have committed error had he not submitted the case to the jury.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE and CARTER concur.

MR. JUSTICE COTHRAN (dissenting): There are certain undisputed facts in the case: Galphin applied for a $5,000.00 policy containing a permanent disability feature, on May 28, 1925, signing a written application therefor; the application was transmitted to the home office of the company at Greenville, S. C.; it was approved, and the policy, dated July 20, 1925, was transmitted to the local agent at Ninety Six where Galphin lived, for delivery in conformity with the prescribed conditions which will be later referred to.

A conflict in the testimony has arisen at this point: Galphin testified that before he consented to make an application for the policy, he imposed the condition, which the agent agreed to, that he (Galphin) would pay the premium upon one of the policies applied for (there were two, a $3,000.00 and a $5,000.00 policy), and that he (the agent) "would keep the other policy in good standing until I could start my gin in 1925." Galphin admitted that he knew that *the company* would not agree to such a proposition, but consented to make the application upon *the agent's* assurance: "I will make the premiums and all of that all right; you need

not worry your head about that." Galphin further testified that when the policies were transmitted to the agent for delivery, he paid the premium upon the $3,000.00 policy, and that *both policies were delivered to him* on July 23, 1925. He does not claim that at that time he paid the premium upon the $5,000.00 policy, *but claims that it was delivered;* that instead of paying the premium in money, "I was relying on the agreement I made with Mr. DeVore," the agent.

The witnesses for the defendant testified that in July, 1925, both policies were presented to Galphin for delivery upon his payment of the premiums; that he paid the premium upon the $3,000.00 policy which was delivered to him, but that he did not pay the premium upon the other; that no agreement was made to extend credit to him for that premium, and that the policy was retained by the agents of the company until September.

The policy by its terms became effective upon the payment of the premium, on July 15, 1925, and thereafter quarterly. The first premium was due on July 15th, and the second on October 15th. Notwithstanding the alleged agreement between Galphin and the agent DeVore, Galphin recognized the fact that he was in default and on September 14th *made a written application for a reinstatement of the policy,* and at that time paid the first premium of $41.10 to the agent and received from him the policy and a receipt showing that the policy, subject to the approval of his application for reinstatement, was continued of force until October 15th. In that application he represented that he had had no other sickness than an attack of biliousness. As a matter of fact, on September 2d he had had a stroke of paralysis, resulting from a cerebral hemorrhage, a blood clot upon his brain, which was of such a serious nature as to require a trip with his physician to Johns Hopkins Hospital for treatment about October 10th and on account of

which he claims to have been permanently disabled; as to this there does not appear to be any question.

There is no controversy as to the fact that the first premium was not paid until September 14th, 12 days after his very serious attack of paralysis and doubtless was superinduced by it. It appears that from that time up to March, 1927, nearly two years after his attack and reinstatement of the policy which was approved September 26th, the plaintiff met the quarterly premiums as they fell due.

In February, 1927, the plaintiff made claim under the disability provision in the $5,000 policy. The company declined the claim and upon a visit to the plaintiff he was assured that his claim could not be paid for the reason that the policy was delivered in violation of its terms after the plaintiff had suffered the stroke of paralysis and while he was still sick. The plaintiff appeared to recognize the position of the company, and, in consideration of a return of the premiums which he had paid with interest, he executed the following release: "Received of Pioneer Life Insurance Company of Greenville, South Carolina, the sum of $297.75 Two Hundred Ninety-seven and 75/100 Dollars, refund of all premiums paid with interest, policy being delivered during sickness, in full for all claims under Policy Number 1981 now terminated by———.

"Dated at Ninety Six, S. C., this 8th day of March, 1927.

"In the presence of M. R. Wilkes.

"Geo. Galphin."

The plaintiff accepted a check for that amount, indorsed it, deposited it in his bank and drew upon it.

As stated, there is no controversy as to the fact that the first premium upon the $5,000.00 policy was not paid until September 14, 1925; nor as to the fact that at that time the plaintiff was suffering from an extremely serious attack of cerebral hemorrhage; it was so serious as to affect his locomotion, and, as he claims, his mental operations, and to be the basis of his claim to a permanent disability. He is hardly

in a position now to controvert the extreme seriousness of his illness at that time.

The *actual payment* of the premium while the applicant was in good health was expressly made a condition precedent to the effectiveness of the policy, by the terms of the application as well as of the policy itself.

The original application, made a part of the contract, provides: "That the company shall incur no liability under this application until it has been received, approved, and the full premium stipulated on the policy has *actually been paid* to and acceptable to the company during my lifetime and good health."

The policy itself provides: "This policy shall not take effect until the first premium shall have been paid while the insured is in good health. All premiums are payable in advance at the home office of the company in Greenville, South Carolina, but may be paid elsewhere to an authorized agent of the company in exchange for a receipt signed by the president or secretary and countersigned by the agent named therein."

Although the time of the *delivery* of the policy was a disputed fact in the case, the plaintiff testifying that it was July 23, 1925, and the agents of the company, September 14, upon a motion for a directed verdict, the evidence must be construed most favorably to the party opposing such motion; in this discussion therefore it will be assumed that the policy was delivered on the date fixed by the plaintiff, July 23d. The provisions quoted from the application and policy, make no reference to the *delivery* of the policy, but to the *actual payment of the premium*. It must be made while the applicant was in good health; that it was not, is apparent.

*Prima facie,* therefore, the policy never became effective, and the burden is upon the plaintiff to break down this presumption. He seeks to accomplish this by the claim that the company extended credit to him upon the premium due

July 15, 1925, until some indefinite time in the fall, when his ginning operations should place him in a favorable financial condition. The evidence offered to sustain this contention is of the weakest possible character. The plaintiff testified that he agreed to sign the application and submit to the medical examination upon the condition that the agent would keep the policy in good standing until the ginning operations opened in the fall; he admits that he knew that the company would not stand for such an agreement and insisted that the consent of the district agent be obtained; it does not appear that any effort to obtain it was attempted, but that the plaintiff acted solely upon the assurance of the agent that everything would be all right; that he relied upon the promise *of the agent,* with full knowledge that it would not bind the company unless some one higher in authority than the soliciting agent agreed thereto.

It seems to me impossible to conclude, under these circumstances, when the plaintiff knew and stated that he knew that the company would not confirm such an agreement on the part of the agent for extended credit, and insisted upon confirmation by the district agent, one presumably of higher authority than the local agent, that the local agent was assuming to act for the company; on the contrary, the conclusion is inevitable that the plaintiff, as he says, was relying upon the personal promise or assurance of the agent. Besides, there was nothing in the alleged agreement that bound the plaintiff to pay the premium at such indefinite time, even if his ginning operations permitted him to do so.

But assuming that what passed between the plaintiff and the agent constituted a complete and enforceable contract, and what is far from appearing, that the agent purported in such agreement to act for the company, that the delivered policy would become and continue effective until the plaintiff at his sweet will, and regardless of his physical condition at that time, should, out of the earnings of his ginning operations, liquidate a questionable obligation, it is manifest that

his attempt was to modify the precise and reasonable terms and conditions of a written agreement in a most material particular, without the slightest evidence of his authority to do so.

The policy settles the question, in providing: *"No modification of this contract shall be made except over the signatures of two of the company's executive officers."*

Even if this provision had not been set forth in the policy, it seems clear that the alleged parol promise of the agent would have been obnoxious to the established rule of law that parol evidence is inadmissible to alter the terms of a written instrument.

The proposed evidence means, if it means anything, that, notwithstanding the plain unmistakable stipulation, agreed to by the plaintiff, that the policy should not become effective until the first premium shall have actually been paid while the applicant was in good health, that stipulation may be expunged from the contract by an oral agreement on the part personally of the agent that the policy should become effective without complying with that condition precedent.

I do not think that it can be controverted that a stipulation, made a part of the contract of insurance, to the effect that, in order for the policy to become effective, the insured must at the time of the delivery of the policy pay the premium and be in good health, is valid.

In the case of *Welch v. Ins. Co.,* 124 S. C., 492, 117 S. E., 720, the application and the policy contained this stipulation: "This policy shall not take effect until the first premium is paid and the policy delivered, nor unless on the date of said payment and delivery of the policy the insured is alive and in sound health." The policy was not delivered for the reason that, when it was received by the local agent for delivery, the insured was sick. The beneficiaries brought an action for damages on account of the refusal to deliver. The Court held: "The appellant was entitled to a nonsuit as asked for on the whole case, on the ground that the ap-

plication and policy contained *three conditions precedent:* First, payment of the premium; second, delivery and acceptance of the policy; third, a state of good health at the time of delivery." See the array of authorities sustaining the proposition, set forth in the case of *Cooley v. Ins. Co.,* 153 S. C., 280, at pages 288 to 292, 150 S. E., 793.

If then the stipulation under discussion constituted a condition precedent, it touched the contract in a most material particular, its very birth; and presents an exceptional occasion for the imperative application of the parol evidence rule. See *Gladden v. Keistler,* 141 S. C., 524, 140 S. E., 161, where the rule is fully discussed. A very striking statement of the rule and the reasons for it is made in the case of *Northern Assurance Co. v. Building Association,* 183 U. S., 308, 22 S. Ct., 133, 141, 46 L. Ed., 213, quoting from the approved opinion of the New Jersey Court in *Franklin Insurance Company v. Martin,* 40 N. J. Law., 568, 29 Am. Rep., 271: "Upon principle, it is impossible to perceive on what ground such testimony should be received. A policy of insurance is a contract in writing, of such a nature as to be within the general rule of law that a contract in writing cannot be varied or altered by parol testimony. If it be ambiguous in its terms, parol evidence, such as would be competent to remove an ambiguity in other written contracts, may be resorted to for the purpose of explaining its meaning. If it incorrectly or imperfectly expresses the actual agreement of the parties, it may be reformed in equity. If strict compliance with the conditions of insurance, with respect to matters to be done by the insured after the contract has been concluded, has been waived, such waiver may, in general, be shown by extrinsic evidence, by parol. Further than this, it is not safe for a Court of law to go. To except policies of insurance out of the class of contracts to which they belong, and deny them the protection of the rule of law that a contract which is put in writing shall not be altered or varied by parol evidence of the contract the par-

ties intended to make, as distinguished from what appears by the written contract, to be that which they have in fact made, is a violation of principle that will open the door to the grossest frauds. * * * A Court of law can do nothing but enforce the contract as the parties have made it. The legal rule that in Courts of law the written contract shall be regarded as the sole repository of the intentions of the parties, and that its terms cannot be changed by parol testimony, is of the utmost importance in the trial of jury cases, and can never be departed from without the risk of disastrous consequences to the rights of the parties."

But it is insisted that by the delivery of the policy in July by the local agent, and his *personal* assurance that it would be instantly effective, and so continue in good standing until the fall ginning operations opened, *the company* has waived the condition precedent as to actual payment of the premium while in good health.

It is too plain for argument that the alleged agreement of the agent tended to establish a modification of the condition precedent, and would be a clear violation of the provision above quoted: "No modification of this contract shall be made except over the signatures of two of the company's executive officers."

In *Northern Assurance Company v. Building Association,* 183 U. S., 308, 22 S. Ct., 133, 46 L. Ed., 213, it was held, quoting syllabus: "It is competent and reasonable for insurance companies to make it a matter of condition in their policies that their agents shall not be deemed to have authority to alter or contradict the express terms of the policies as executed and delivered."

The Court in the opinion stated: " * * * that, where waiver is relied on, the plaintiff must show that the company, with knowledge of the facts that occasioned the forfeiture, dispensed with the observance of the condition; that where the waiver relied on is an act of an agent; it must be shown either that the agent had express authority

from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the action of the agent."

In *New York Life Ins. Co. v. Fletcher,* 117 U. S., 519, 6 S. Ct., 837, 842, 29 L. Ed., 934, the Court said: "The company, like any other principal, could limit the authority of its agents, and thus bind all parties dealing with them with knowledge of the limitation. It must be presumed that he read the application, and was cognizant of the limitations therein expressed."

In *Penn. M. L. Ins. Co. v. Blount,* 165 Ga., 193, 140 S. E., 496, quoting syllabus, it was held: "Where application for life insurance policy made part of policy, provided that insurance should not be in force until first premium thereon is actually paid, and that agents could not alter contract, and local agent, in violation of specific instruction, delivered policy to applicant without receiving premium, which was not actually known by any officials, or other agents of insurer, local agent's knowledge of delivery and surrender of policy to applicant is not imputable to insurer, and is not knowledge of insurer."

In *Prudential Ins. Co. v. Moore,* 231 U. S., 560, 34 S. Ct., 191, 58 L. Ed., 367, it was held, quoting syllabus: "Where the policy itself expressly provides that it cannot be varied by any one except an officer of the company issuing it, the company is not estopped to contest the policy on the ground of misrepresentations or concealment in the application because its agent has knowledge of actual conditions."

For a fuller discussion of this issue see dissenting opinon in the case of *Fender v. Insurance Company,* 154 S. E., —.

The plaintiff cannot stand upon the double grounds that the company by reason of the personal agreement of the agent has waived the condition precedent that the policy does not take effect until actual payment of the premium, and that the agreement of the agent was tantamount to actual payment. The most that could possibly be claimed for the

agreement is that credit for the payment was extended, which left unaffected the condition precedent that the payment must be made while the applicant was in good health. Of this there is not the slightest evidence. On the contrary it is conceded that, when the payment was made, the applicant was suffering from the recent attack, 12 days before, of cerebral hemorrhage.

I think, too, that the insured is barred by the provision in the policy in reference to permanent disability; it is as follows: "If, before attaining the age of sixty years and while this policy is in full force and there is no default in payment of premiums thereunder, the insured shall become totally and permanently disabled. * * *"

The plaintiff, as he claims and cannot now deny, became permanently disabled on September 2, 1925; he was at that time in default of the payment of the premium, and on September 14th when he made the payment he could not possibly have complied with the unwaived condition precedent that he must not only have paid the premium, but must have done so while he was in good health.

The application for reinstatement contains the following stipulation: "I agree that said policy shall not be considered reinstated by reason of any cash paid or settlement made in connection with this application unless and until this application shall be approved for re-instatement by the proper officers of the company; and notice given me in writing to that effect while *I am still alive and in good health;* and until a settlement satisfactory to the company is made of all past due premiums or other indebtedness under the policy as now claimed by the company. * * *" It was impossible for him at that time to have complied with the condition italicized.

The statement contained in the opinion of Mr. Justice Stabler: "As the agent had authority to deliver the policy and collect the premium, he possessed the implied authority to vary the mode and time of payment (of the premium),"

I do not at all approve. Such a holding, in my opinion, is to apply a different rule to the relation of principal and agent in the matter of *insurance* contracts, from that applied to every other relation of principal and agent. I do not think that the right of a principal *in every other relation,* to circumscribe the power of his agent, has ever been denied, particularly where the party dealing with the agent has express notice, as in the case at bar, of the limited power of the agent. It is difficult for me to comprehend how an authority, raised only by implication, can override an express stipulation in the contract, acceded to by the party claiming the implicaton, that such authority shall not exist. The plaintiff had knowledge of the limitation upon the power of the agent through the very clear provisions of the policy and application; not only this, but his testimony shows that he knew that the company would not recognize such an extension of credit by the local agent.

It has been held in many cases, and rightly, I think, that a provision limiting the power of an agent has no sacrosanct character over any other provision and like all of them is itself subject to waiver by the company; but would it not be a most illogical and unjust conclusion that the company should be held to have waived a provision limiting the power of an agent, by reason of the act of the agent himself in doing what he was forbidden to do? If a principal should be held bound by waiver or estoppel, simply by reason of the fact that the agent had exceeded his authority, there could not in any case be any virtue in the acknowledged right of the principal to limit the agent's authority. It would be for the Court to say: "Mr. Principal you have the right to limit" your agent's authority; you have the right to say to him 'you shall not do so and so'; but inasmuch as he has exceeded his authority, and to the knowledge of the party with whom he dealt, has done what you told him he could not do, you must be held to have waived the limitation, altho you have forbidden the act, the third party by contract has recog-

nized the limitation and you have not ratified it." I cannot believe that the Court is prepared to sanction such an illogical conclusion.

In *Slocum v. Ins. Co.*, 228 U. S., 364, 33 S. Ct., 523, 527, 57 L. Ed., 879, the Court said: "One who deals with an agent, knowing that he is clothed with a circumscribed authority and that his act transcends his powers, cannot hold his principal; and this is true whether the agent is a general or a special one, for a principal may limit the authority of one as well as of the other."

In *Tiffany, Agency*, p. 53, it is said: " * * * If a third person has notice of limitations on an agent's authority, he cannot gain rights against the principal by an act of the agent which exceeds the known limitations."

The opinion of Mr. Justice Stabler contains this statement: "There was evidence that the policy was delivered in July by the local agent and that credit was extended the insured for payment of the initial premium."

There is no evidence that credit was extended for the payment of the premium; all that appears is that the local agent gave the plaintiff his assurance that the policy would remain in good standing until the fall; he did not assume to act for the company; and, if he did, he was without warrant to bind it as the plaintiff himself acknowledged.

I think that the presiding Judge committed error in charging (upon the contention of the defendant that the policy was not delivered until September 14, 1925), that, if the agent of the company knew at that time that the plaintiff had had the attack of paralysis on September 2d, his knowledge of that fact was imputable to the company which could not now take advantage of the fact that the policy was delivered when the plaintiff was not in good health. I do not think that either the contract between the parties or the law ever intended to clothe the local agent with such unqualified power. If the agent had that knowledge which necessarily the plaintiff also had, it was a fraud upon the company participated

in by both the agent and the plaintiff for their mutual benefit. It has universally been held that knowledge acquired by an agent will not be imputed to the principal when the act of the agent is for his own benefit, particularly when participated in by the insured. The theory upon which the knowledge of the agent is imputed to the principal is that it will be presumed ordinarily that he will communicate it to his principal, a theory that cannot exist when the act of the agent is for his benefit and to communicate such knowledge to the principal will frustrate the nefarious scheme.

There is no question as to the correctness of the proposition that a principal is bound by the acts of agent within the scope and course of his agency, even if such act be a fraud upon *the person with whom the agent may be dealing;* but this principle manifestly has no application to a case where the agent and the third person are co-operating in a *fraud upon the principal.*

The case of *Ayers v. Ins. Co..* 148 S. C., 355, 146 S. E., 147, 149, opinion by Mr. Justice Blease, is precisely in point. In that case the Court said:

"In the trial in the Court of Common Pleas for Sumter County, the presiding Judge, Hon. H. F. Rice, directed a verdict for the defendant upon two grounds: (1) That there was collusive fraud on the part of the agent of the company and the beneficiary in the issuance of the policy; and (2) that the policy was void under its own terms, because at the time of the application and issuing of the policy the insured was not in sound health.

"In this appeal by the plaintiff from the directed verdict against him, the contention is made that the agent's knowledge of the ill health of the insured estops the company from asserting the forfeiture; and therefore the case should have been submitted to the jury for determination.

."In presenting their position, appellant's counsel rely upon the authority of *Rearden v. Insurance Co.,* 79 S. C., 529, 60 S. E., 1106; *Huestess v. Insurance Co.,* 88 S. C., 31,

70 S. E., 403; and *Rogers v. Insurance Co.,* 135 S. C., 89, 133 S. E., 215, 45 A. L. R., 1172. The main principle stated in the cited cases has been so long recognized by this Court that it is no longer open to question. That general principle, as announced in one of the syllabi of the *Huestess case,* is this : ' A principal is bound by the act of his agent even where he is actuated by a fraudulent intent, if he is acting within the scope of his employment.'

"But it is recognized in the *Huestess case* that the company should not be bound by the agent's knowledge when the insured, or the person acting for the insured, participates in the fraud. The majority opinion of the Court on this point seems to me in full accord with the opinion of Mr. Justice Woods (who dissented on other grounds), where the rule, together with the exception that seems applicable to the present case, is concisely stated as follows : 'The rule has been laid down in this State that an insurance company cannot set up forfeiture on account of facts known by the agent of the company to be existing at the time of making the contracts. *Pelzer Mfg. Co. v. Sun Fire Office,* 36 S. C., 213, 15 S. E., 562; *Pearlstine v. Phoenix Ins. Co.,* 74 S. C., 246, 54 S. E., 372; *Fludd v. Equitable Society,* 75 S. C., 329 (315), 55 S. E., 762; *Rearden v. State M. L. Ins. Co.,* 79 S. C., 526, 60 S. E., 1106. *The exception to this rule is that the principal will not be bound by the knowledge of the agent if the agent is acting in fraud of his principal and is aided in his corrupt design by the intentional fraud of the party applying for insurance. Knobelock v. Germania Savings Bank,* 50 S. C., 259, 27 S. E., 962; *State v. Talley,* 77 S. C., 99, 57 S. E., 618, 11 L. R. A. (N. S.), 938, note (122 Am. St. Rep., 559).' (Italics ours.) We do not find anything in the *Rearden* and *Rogers cases* which conflicts with the exception to the rule laid down in the *Huestess case,* which we have italicized above."

See also, *Adler v. Ins. Co.* (C. C. A.), 33 F. (2d), 827; *Mutual Life Ins. Co. v. Hilton,* 241 U. S., 613, 36 S. Ct., 676, 60 L. Ed., 1202; *Armstrong v. Ashley,* 204 U. S., 272, 27 S. Ct., 270, 51 L. Ed., 482; *American Surety Co. v. Pauly,* 170 U. S.. 133, 18 S. Ct., 552, 42 L. Ed., 977; *Schutz v. Jordan,* 141 U. S., 213, 11 S. Ct., 906, 35 L. Ed., 705; *Interstate Nat. Bank v. Bank* (C. C. A.), 245 F., 294; *Bank of Overton v. Thompson* (C. C. A.), 118 F., 798; *Thompson v. Capitol Co.* (C. C. A.), 65 F., 341; *Western Mortg. & Inv. Co. v. Ganzer* (C. C. A.), 63 F., 647; *Eureka Corp. v. Scalo,* 158 Md., 73, 148 A., 267.

Other citations without number could be made. See Decennial Digests, Insurance, 380.

I do not think, therefore, that it makes a particle of difference whether the agent, at the time he accepted the premium and delivered the policy on September 14th, knew or did not know of the paralytic stroke on September 2d. If he did not know of it, the company did not know of it, for there is no evidence of its knowledge except through the agent; if he did know of it, his act was a palpable fraud upon the company participated in by the plaintiff.

The plaintiff was confronted with these apparently insurmountable obstacles:

1. That the policy was not delivered to him until September 14, 1925; he answers this objection by testifying that it was delivered in July; and for the purposes of this appeal I have assumed the correctness of his testimony.

2. That the premium was not paid until September 14th; this he concedes.

3. That the premium was not paid while he was in good health; he concedes that his paralytic stroke occurred on September 2d, 12 days before the payment was made, and of course he could not have been in good health.

4. He admitted in his application for reinstatement that the policy had not been delivered and that he was in default; he testified that his mind was so affected at that time that

he did not know what he was doing; I assume for the purposes of this appeal the correctness of his testimony in this regard and dismiss that admission from consideration.

5. In March, 1927, a year and some months after the delivery of the policy in September, 1925, he signed a release, in which he admitted that the policy was delivered while he was sick, a fact that is proved without his admission; he meets this admission by a similar plea of mental weakness; for the purposes of this appeal I will concede the correctness of his testimony in this regard and dismiss that admission from consideration.

6. It is absolutely of no consequence whether his mental condition was such as to exclude from consideration the admissions in his application for reinstatement and in the alleged release; the fact remains unshaken that he did not pay the premium until September 14th, 12 days after his stroke, when he was in such an ill condition resulting from it as to suggest internement in the Baltimore Hospital for treatment, a clear violation of the conditions of the policy.

7. It is absolutely of no consequence whether *the policy was delivered,* as he says, on July 23d, or, as the defendant insists, on September 14th; the fact remains unshaken that *the premium was not paid while he was in good health.*

It seems strange, in view of the standing of the plaintiff, that he found it necessary to arrange with the local agent for an indulgence of several months upon a premium of only about $40.00; and that he took up the matter of carrying out his part of the agreement only after he had suffered the paralytic stroke; but whether his statement be true or not, and assuming it to be true, he necessarily simply deferred the time of payment and took the risk of being in good health when he chose later to make the payment. The extension of the credit affected only the time of payment and not the condition as to payment while in good health.

The case of *Williams v. Ins. Co.,* 112 S. C., 436, 100 S. E , 157, 159, is cited by the learned Justice as sustaining the

proposition that a condition precedent may be waived by an agent. An examination of this case will show that, under its peculiar facts, it is a strong authority for the position above taken that a parol contract by an agent will not be permitted to alter the terms of a written instrument. The Court says: "The only contention of the plaintiff is that the defendant company, by and through its general agent, the Gordon Company, agreed by parol with H. T. Williams, the agent of the company, to sell insurance, and the husband of the applicant and by the words of the application constituted the payer of the premiums, that the initial premium should be paid by a bonus to be earned by H. T. Williams as selling agent for the company. * * * Plainly, the agreement of H. T. Williams with the Gordon Company, to which H. T. Williams offered to testify, was not so reduced to writing and made a part of the application. For that reason it is incompetent, and the Court was right to exclude it."

For these reasons I think that the motion of the defendant for a directed verdict should have been granted.