## 11977

### ROGERS v. ATLANTIC LIFE INSURANCE CO.

#### (133 S. E., 215)

1. INSURANCE.—Beneficiary of life policy must have some kind of interest in continuance of life of insured when taking out insurance on life of another for his benefit.

2. INSURANCE—PERSON HAVING TAKEN OUT LIFE INSURANCE ON BROTHER BETWEEN WHOM THERE WAS BROTHERLY AFFECTION AND RECIPROCAL AID AND HELP HELD TO HAVE HAD INSURABLE INTEREST IN LIFE OF BROTHER.—Person having taken out insurance on brother who was willing that it should be done, and assisted therein, *held* to have had insurable interest in life of brother, in view of testimony showing brotherly affection and reciprocal aid and help.

3. CONTRACTS.—Sound public policy requires enforcement of contracts deliberately made which do not clearly contravene some positive law or rule of public morals.

4. INSURANCE—INSURER, HAVING CONTRACTED TO INSURE LIVES OF PERSONS, AND RECEIVING PREMIUMS THEREFOR SHOULD NOT BE PERMITTED TO ESCAPE CONTRACT BECAUSE OF LACK OF INSURABLE INTEREST, UNLESS IT CLEARLY APPEARS SUCH CONTRACTS ARE PERNICIOUS AND DANGEROUS TO SOCIETY.—Insurer, having contracted to insure lives of persons, and receiving premiums therefor, should not be allowed to escape contracts in ground of want of insurable interest, unless it clearly appears that such contracts are pernicious and dangerous to society.

NOTE: Rule as to insurable interest in lives of brothers or sisters, see note in 54 L. R. A., 231.

5. INSURANCE—QUESTION OF WHETHER INSURER'S AGENT SUGGESTED THAT PERSON TAKE OUT INSURANCE ON LIFE OF BROTHER, AND HAD KNOWLEDGE THAT HE WAS ULTIMATE BENEFICIARY, AND WAS PAYING PREMIUMS, HELD PROPERLY SUBMITTED TO JURY.—In action on life policy, question of whether insurer's agent had suggested that person take out policy on life of his brother, and had full knowledge that he was to be ultimate beneficiary, and pay premiums thereon, *held* properly submitted to jury.

6. INSURANCE—CHARGE THAT KNOWLEDGE OF AGENT WAS KNOWLEDGE OF INSURER, AND THAT AGENT'S SUGGESTING PERSON TAKE OUT INSURANCE ON BROTHER'S LIFE CONSTITUTED WAIVER OF DEFENSE OF LACK OF INSURABLE INTEREST, HELD PROPER.—Charge that knowledge of agent of insurer was knowledge of insurer, and that agent's suggestion that person take out policy on life of brother constituted waiver of defense of lack of insurable interest *held* proper.

7. INSURANCE—QUESTION WHETHER INSURED IN ANSWERING "NO" TO QUESTIONS RELATIVE TO OPERATIONS INTENDED TO DECEIVE INSURANCE COMPANY HELD PROPERLY SUBMITTED TO JURY UNDER EVIDENCE SHOWING THAT HE HAD NO KNOWLEDGE EXCEPT THAT IT WAS MINOR OPERATION.—Question whether insured in answering "No" to questions in application relating to surgical operations intended to deceive and defraud insurance company *held* properly submitted to jury under evidence showing that insured had no knowledge that operation was other than minor operation.

8. INSURANCE—JURY COULD PROPERLY CONSIDER TESTIMONY AS TO INSURED'S GOOD CHARACTER AND HONESTY IN DETERMINING WHETHER INSURED PRACTICED FRAUD ON INSUER IN HIS ANSWERS TO QUESTIONS IN APPLICATION.—In action on life policy, it was proper for jury to take into consideration testimony of good character and honesty of insured in determining whether insured practiced fraud on insurer by his answers to questions in application.

9. INSURANCE.—Whether applicant for insurance by his answers to questions in application intended to practice fraud on insurer, *held* for jury.

10. INSURANCE—AGENT'S KNOWLEDGE OF REMOVAL OF BUMP FROM INSURED'S FACE IS IMPUTED TO INSURER, AND QUESTION OF INSURED'S WAIVER THEREOF HELD PROPERLY SUBMITTED TO JURY.—If insurer's agent knew before insurance was issued that insured had bump or tumor removed, such knowledge is imputed to insurer, and question of waiver on part of insurer *held* properly submitted to jury.

11. ABATEMENT AND REVIVAL—SUBSTITUTING INSURED'S ADMINISTRATOR AS PLAINTIFF IN SUIT BROUGHT BY BROTHER, WHO WAS BENEFICIARY, AFTER ASSIGNMENT BY BROTHER, HELD PROPER WHETHER THERE WAS CONSIDERATION FOR ASSIGNMENT OR NOT.—Where person having insurance on life of brother had, after beginning suit on policy, assigned all his claim to insured's administrator, who

was substituted as plaintiff by agreement, *held* that administrator was proper party to prosecute suit whether there was any consideration for assignment or not.

12. Insurance.—Notice to agent is notice to insurer, and waiver may be made by insurer through agent.

13. Insurance.—When there is conflict between provisions of insurance policy and law, the law must prevail.

14. Trial.—In action on life policy, requested charge that neither insurance agent nor examining physician had power to waive any of legal rights under contract *held* properly refused as ignoring duty to submit to jury question of waiver.

15. Trial—Requested Charge That Answers of Insured to Questions in Application Must be Held to be Untrue and Material in Issuance of Policy Held Properly Refused as Being Charge On Facts.—In action on life policy, requested charge that answers to certain questions should be held untrue and material in issuance of policy *held* properly refused as being charge on facts.

16. Trial—Requested Charge That Jury Should Not Consider as Evidence Testimony of Beneficiary or of Agent as to Statements Made to Agent, and That Answers to Questions in Application Were Only Facts to be Considered, Held Properly Refused as Being Charge on Facts.—In action on life policy, requested charge that jury should not consider either testimony of beneficiary or agent as to statements relative to insured's condition made by beneficiary to agent, and that answers to questions in application were only facts to be considered as basis of contract, *held* properly refused as being charge on facts, and amounting to direction of verdict.

Before DeVore, J., Spartanburg, October, 1924.   Affirmed.

Action by J. P. Rogers as administrator of the estate of James A. Rogers, deceased, against the Atlantic Life Insurance Company.   Judgment for plaintiff, and defendant appeals.

*Messrs. DePass & Wrightson* and *Andrew D. Christian,* for appellant, cite:   *No insurable interest in life of brother:* 83 S. E., 1045.   *Beneficiary paying premiums:*   189 N. C., 212; 126 S. E., 603.   *Cases distinguished:*   129 S. C., 432; 124 S. E., 577; 119 S. C., 402; 112 S. E., 44; 101 S. E., 653; 79 S. C., 526; 60 S. E., 1106.   *Waiver defined:*   78 S. C., 461; 59 S. E., 145.   *Knowledge of soliciting agent re-*

*garding health of applicant for insurance not chargeable to company:* 184 N. Y., 337; 143 N. Y. S., 1063; 203 N. W.; 600. *What are material facts in application for insurance:* 120 S. C., 93; 112 S. E., 547; 36 S. C., 213; 15 S. E., 562; 123 S. E., 737; 79 S. E., 806; 201 Mo. App., 48; 209 S. W., 630; 32 C. J., 514.

*Messrs. Nicholls, Wyche & Byrnes,* for respondent, cite: *Refusal to direct verdict for defendant proper:* 120 S. C., 93; 112 S. E., 547; 115 S. C., 128; 104 S. E., 538; 117 S. C., 437; 109 S. E., 279; 115 S. C., 59; 104 S. E., 327; 112 S. C., 139; 99 S. E., 436; 107 S. C., 21; 91 S. E., 1043; 106 S. C., 419; 91 S. E., 324; 100 S. C., 121; 84 S. E., 413; 97 S. C., 164; 81 S. E., 497; 88 S. C., 31; 70 S. E., 403. *Examination of insured by physician of insurer as evidence:* 95 S. C., 199. *Evidence of good character tends to rebut charge of fraud:* 112 S. C., 141. *Knowledge of insurer's agent chargeable to insurer:* 126 S. E., 126; 106 S. C., 419; 93 S. C., 406; 75 S. C., 320; 75 S. C., 263; 74 S. C., 246; 52 S. C., 228; 48 S. C., 223; 32 S. C., 215; Civ. Code, 1922, Secs. 4088 and 4089; 62 N. E., 763. *Agent of insurer acting fraudulently may bind insurer:* 88 S. C., 31. *Insurable interest in life of brother:* 51 S. C., 114. *Assignment of life policy to one without insurable interest valid:* 111 S. W., 795; 18 L. R. A. (N. S.), 114; 12 S. W., 626; 7 L. R. A., 189. *Insurer estopped to set up lack of insurable interest:* 48 S. C., 195.

May 10, 1926.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

On November 22, 1922, the defendant insurance company, upon an application made by James A. Rogers, insured his life in the sum of $1,000; the policy being made in favor of his estate. At a later date, December 9, 1922, he assigned this policy to his brother, W. S. Rogers, but it seems that no copy of this assignment was sent to the company, as required

by the policy, although W. S. Rogers testified that the agent of the company prepared the assignment and had James A. Rogers to execute it. On the 28th day of August, 1923, the insured, James A. Rogers, died; the cause of his death not being disclosed by the record. Proof of his death was made in September of that year, and the insurance company refused to pay the amount of the insurance, but offered to return the premium which had been paid on the policy.

This suit was then begun, December 21, 1923, by W. S. Rogers, who claimed to be the beneficiary under the policy by virtue of the alleged assignment made to him by the insured, James A. Rogers. The defendant, by its answer, set up the defense of fraud on the part of the insured, James A. Rogers, alleging that in the application for the policy he had falsely and fraudulently answered certain questions propounded him by the company's examining physician, and had thus misled and deceived the company into issuing the policy on his life; that before and at the time of the issuing of the policy the insured had the fatal and malignant disease of cancer, which fact he had concealed from the defendant by his answers; and that for the reasons alleged the policy of insurance issued him was noneffective and not binding on the defendant.

The case was called for trial October 1, 1924, and on that day W. S. Rogers assigned to J. P. Rogers, the administrator of the estate of James A. Rogers, deceased, all his interest in the policy, and by consent of all parties the said administrator was substituted as plaintiff in the case.

At the close of the testimony of Dr. Fike, one of the witnesses for the defendant, the defendant was allowed, upon its request, to amend its answer by setting up the further defense that, under the testimony disclosed in the trial, which theretofore was unknown to the defendant, the contract of insurance entered into was a wagering contract on the life of James A. Rogers, deceased; that his brother, W. S. Rogers, had conspired with the deceased to have the

policy made with W. S. Rogers as the beneficiary, although W. S. Rogers had no insurable interest in the life of his brother, and that the true beneficiary was not the estate of James A. Rogers, but was W. S. Rogers; that W. S. Rogers was to pay the premium on the policy; that James A. Rogers had falsely answered the questions as to the payment of the premium and who should be named as the true beneficiary; and that the transaction was a gamble or wager by W. S. Rogers on the life of his brother; and that both of them concealed these facts from the insurance company; and that, therefore, the policy was void in its inception. The plaintiff entered a general denial as to these allegations.

The jury found a verdict for the plaintiff for the full amount asked for, and the defendant comes to this Court on appeal, stating fourteen exceptions, imputing error to the presiding Judge in four main particulars: (1) Error in failing to direct a verdict for the defendant; (2) error in charging the law; (3) error in the introduction of certain evidence; (4) error in refusing to charge certain of defendant's requests to charge.

As to the specifications of error in refusing to direct a verdict: The second exception, which we shall consider first, raises the question that W. S. Rogers had no insurable interest in the life of his brother, and is as follows:

"His Honor erred, it is respectfully submitted, in refusing to direct a verdict for the defendant because the evidence, without contradiction, showed that, pursuant to a secret agreement and arrangement between the insured and his brother, William S. Rogers, the policy of insurance was obtained for the benefit of William S. Rogers, who paid the premium, and who had no insurable interest in the life of his brother, and under the circumstances there was no meeting of the minds or contract between the insured and insurer; that such a contract, if any existed, was a wager or gambling transaction, and was illegal and unenforceable by either party, his administrator, or assignee."

While the authorities are not in exact harmony as to what constitutes requisite interest, they all agree that the beneficiary of a life insurance policy must have some kind of interest in the continuance of the life of the insured, when one person takes out insurance upon the life of another for his own benefit.

In 37 C. J., 385, it is said:

"A person cannot take out a valid and enforceable policy of insurance for his own benefit on the life of a person in which he has no insurable interest; such a policy or contract of insurance is void and unenforceable on grounds of public policy, it being merely a wagering contract."

See, also 14 R. C. L., 919; Elliott on Insurance, 52.

"The essential thing is that the policy shall be obtained in good faith, and not for the purpose of speculating on the hazard of a life in which the insurer has no interest." Elliott on Insurance, 54.

In *Croswell v. Association,* 51 S. C., 114; 28 S. E., 200, 201, the Court said:

"It is firmly established that insurance procured by one person on the life of another, in which the party effecting the insurance has no interest, is void as a wager contract against public policy, which condemns gambling speculation upon human life. But it is also well settled that a person may insure his own life, and make the policy payable to whomsoever he chooses, even though the beneficiary has no insurable interest in his life, provided the transaction is *bona fide,* and not a mere cover to evade the law against wager policies. * * * In such case the interest which the insured has in his own life supports the policy, and prevents it from being condemned as a wager contract."

In the *Croswell Case, supra,* the Court approves the doctrine that brothers and sisters have an insurable interest in the life of each other on account of relationship alone. It goes further, and broadly intimates, if it does not so hold, that a brother has an insurable interest in the life of his

brother.    The Court in that case, pointing out that all the authorities agree that a pecuniary interest will preserve the policy, at least to the extent of the interest, and commenting upon the fallacies of the argument that a pecuniary interest will in all cases protect society against the danger that the life of the insured may be destroyed by the holder of the policy, says :

"Indeed, there is much fiction in reference to the supposed necessity of a pecuniary insurable interest to support a life insurance policy, when a near relative insures for the benefit of another.    Close ties of blood or affinity, as parent, child, brother, sister, husband, wife, with the natural affection and moral forces which generally prompt one such to serve and protect the other, rendering it highly improbable that for money one would take the life of the other, afford a surer guaranty to society against the dangers of betting on the duration of human life than any mere pecuniary interest in the life insured, often more imaginary than real."

This reasoning of the Court, which is sound and well founded, clearly indicates the view that the ties of blood and kinship which exist between brothers as a general rule may give the one an insurable interest in the life of the other. While in some jurisdictions it is held that a brother has no insurable interest in the life of his brother by reason of kinship alone, it does not seem unreasonable or against public policy, but more in keeping with an enlightened humanitarian view, that such insurable interest should exist, at least where the brother whose life is insured agrees to, and collaborates with the other in securing the insurance.    The natural laws of kinship and blood, the ties of affection and friendship which ordinarily exist between brother and brother, negative the idea and belief that one would desire the removal of the other by reason of the existence of such insurance.

In the case at bar, James A. Rogers consented that the insurance on his life be taken out by his brother in favor of

the brother, and gave whatever assistance and help he could in securing same. There is nothing in the record of the case to show that the natural feelings of brother to brother were not sustained between the two men, but, on the contrary, the testimony tends to show that the relations between them were characterized by brotherly affection and reciprocal aid and help.

Under the *Croswell Case, supra,* and in the view of the entire subject herein expressed, we are constrained to hold that W. S. Rogers had an insurable interest in the life of his brother.

However, if it is doubtful on authority that a brother by reason of kinship alone, has an insurable interest in the life of his brother, it appears that that would not be a sufficient reason to declare the policy void. As said by the Court in the *Croswell Case, supra:*

"A sound public policy requires the enforcement of contracts deliberately made which do not clearly contravene some positive law or rule of public morals. It is surely not a sound policy to permit insurers to contract to insure the lives of persons, receive premiums therefor as long as the insured, the beneficiary, or the assignee will continue to pay, and then, when the time comes for the insurers to pay what they agreed to pay, allow them to escape their contract on the ground of want of insurable interest in the life insured, unless it clearly appears that such contracts are pernicious and dangerous to society. Courts should not annul contracts on doubtful grounds of public policy. In such matters it is better that the Legislature should first speak."

Again: If W. S. Rogers had no insurable interest in the life of his brother, there was testimony at the trial of the case tending to show that Tiller, the general agent of the company, some time before the policy was issued, went to W. S. Rogers, and suggested to him that he take out a policy of insurance on the life of his brother, James A. Rogers; that W. S. Rogers, acting on Tiller's suggestions, saw his

brother about the matter, who consented and agreed that the policy be taken out; that Tiller had full knowledge that W. S. Rogers was to be the ultimate beneficiary under the policy and was to pay the premiums thereon; that Tiller actually delivered the policy to W. S. Rogers and collected the premium from him; and that the whole transaction, including the application for the policy, the issuance of same to the estate of James A. Rogers, and its subsequent assignment to W. S. Rogers, was carried out under the directions and according to the instructions of the agent Tiller.

The trial Judge properly submitted to the jury the question of fact as to whether or not Tiller, the agent of the company, actually had such part in the transaction as represented by this testimony, and correctly charged them that the knowledge of the agent was the knowledge of the company, and that such a course of action on the part of the agent would constitute a waiver of this defense by the company.

In *Huestess v. South Atlantic Life Insurance Co.,* 88 S. C., 31; 70 S. E., 403, the Court said that "the principal is bound by the acts of the agent, even when he is actuated by a fraudulent intent, if he is acting within the scope of his employment." See, also, *Fludd v. Assurance Society,* 75 S. C., 315; 55 S. E., 762. *Hankinson v. Insurance Co.,* 80 S. C., 392; 61 S. E., 905. This exception is overruled.

By its first exception the appellant imputes error to the Circuit Judge in refusing to direct a verdict for defendant on the ground that James A. Rogers, the insured, made false statements in his application, which were material and relied upon by the defendant, and were made for the purpose of deceiving the defendant. This exception is as follows:

"His Honor erred, it is respectfully submitted, in refusing to direct a verdict for the defendant because the evidence showed conclusively and without contradiction that the insured made false statements in his application, which were material; were relied and acted upon by the defendant; were

made for the purpose of deceiving defendant; and were known by the insured to be false; and within a reasonable time after the truth was learned defendant gave the holder of policy notice of its intention to avoid the policy, and tendered him the premium with interest."

In part 2 of the application, among other questions answered by the applicant, the answers to which were written in the handwriting of the examining physician of the company, were the following: ·

"5. Have you ever suffered from any ailment or disease of:

"A. Brain, nervous system? A. No.

"B. Heart, lungs? B. No.

"C. Stomach, intestines, liver, kidneys, bladder? C. No. ·

"D. Skin, middle ear, eyes, nose, throat? D. No.

"6. A. Have you ever had rheumatism, gout, syphilis? A. No.

"B. Have you ever undergone any surgical operation? B. No.

"C. Have you ever had any accident or injury? C. No.

"D. Have you raised or spat blood? D. No.          .

"E. Have you ever been told that your urine contained sugar, albumin or casts? E. No.

"F. Have you consulted or been treated by any physician for any ailment or disease not included in your above answers? F. No."

The appellant complains that the applicant in answering "No" to the questions relating to previous ailments or diseases and surgical operations answered falsely, and intended thereby to deceive and defraud the insurance company in the issuance of the policy applied for by him; that these statements made by the applicant were material; and that the company would not have issued the policy if it had known that the said statements or either of them were false.

The question as to whether James A. Rogers, in answering "No" to these questions, intended to defraud and deceive the insurance company was prop-

erly, under the testimony, submitted to the jury. It appears that early in 1922 Dr. Fike removed a small growth from the face of James A. Rogers. The doctor in his testimony did not say that it was a cancer. In fact he testified that he did not think that it was a cancer, but only out of precaution sent him to Atlanta to be treated. Dr. Allen, the physician who represented the company in examining Rogers for life insurance, said that, if Rogers had cancer, he did not discover it; that he was in good condition, and was a good risk for life insurance; and that if he had a scar on his face when he examined him he did not notice it. It is true the depositions of the Atlanta physicians, who claimed to have treated Rogers with radium, were to the effect that the growth which Dr. Fike had removed from the face of the insured was of a cancerous nature. There is no testimony, however, that Rogers was told or knew that the growth was cancerous, if it was. Dr. Fike did not think it was, and the Atlanta physicians for some reason did not deem it necessary to tell Rogers. Therefore, it was clearly for the jury to say under all the testimony whether James A. Rogers, at or before the time he answered the questions, had cancer; and whether when answering the questions he knew that he had or had had cancer, if this were the case; and whether he answered "No" for the purpose of defrauding and deceiving the insurance company.

As to the removal of the tumor, this work was done in Dr. Fike's office, and the doctor appeared to think it of little importance as an operation, setting it down at most as a "minor surgical" and saying that cutting a bump off a man's face would not be considered a real surgical operation. He also testified that in October or November, 1922, he would have recommended Rogers as being physically a good risk for life insurance. It must be assumed that a doctor's definition of a surgical operation would be much more technical than that of a layman, and in view of Dr. Fike's attitude toward the "operation," the

Court could not say that Rogers would consider what had been done in Dr. Fike's office as an operation, or that in answering "No" to this question he did so with intent to defraud and deceive the company.  Dr. Allen, the company's physician, who is assumed to have made a very careful examination of the applicant in order to determine whether or not he was a proper subject for insurance, saw no scar on the face of the applicant which would indicate that there had been an operation as contended for by the appellant.

Again, a number of witnesses testified to the good character and honesty of the deceased, James A. Rogers, and it was proper for the jury to take this into consideration in arriving at their verdict, which would necessarily involve the question as to whether or not the deceased practiced a fraud upon the appellant as alleged.  In *Wingo v. N. Y. Life Insurance Co.,* 112 S. C., 139; 99 S. E., 436, the Court, in passing upon a similar question, said:

"The jury in arriving at their verdict could take into consideration the evidence of good character of the deceased in determining the allegation of fraud and deceit alleged by the defendant to have been practiced by him."

All the questions and answers under discussion are more or less closely related to and involved with each other in the contention that the answers were fraudulent, and under all the circumstances it was for the jury to say whether the applicant by his answers intended to practice a fraud upon the defendant.  In this case, as in the *Huestess Case, supra:*

"There is no direct or positive testimony tending to show that the insured intended to practice a fraud upon the defendant other than the mere inference, arising from the signing of the application for insurance, containing the answers alleged to be false."

As said in the *Wingo Case,* which was very similar to the case at bar:

"All of the evidence, facts, and circumstances brought out in the case should have been submitted to the jury for their determination."

Moreover, Tiller, the agent of the company, according to the testimony of W. S. Rogers, knew before the insurance was issued that a growth of some kind had been removed from the face of his brother, James A. Rogers. On this point W. S. Rogers testified:

"Q. Mr. Rogers, state whether or not shortly after April, 1922, in the city of Spartanburg, in front of Heinitsh's drug store, Mr. W. H. Tiller, general agent for the Atlantic Life Insurance Company, approached you about taking out some life insurance on your brother, James A. Rogers, and that in conversation with him concerning that that you told him that your brother had just had a bump or tumor removed from his face by Dr. Fike, in this city. Answer that 'Yes' or 'No.' A. Yes, sir."

Mr. Tiller denied that W. S. Rogers made this statement to him, but admitted that Rogers told him that there was a little sore or something on the face of James A. Rogers, the nature of which was not disclosed to him. If Tiller, the general agent of the company, knew or was told before the insurance was issued that a bump or tumor had been removed from the face of James A. Rogers, his knowledge of these facts was imputed to the insurance company, and the question of waiver on the part of the company was properly submitted to the jury.

In *Fludd v. Assurance Society*, 75 S. C., 315; 55 S. E., 762, the Court held:

"The knowledge of an agent acquired within the scope of his agency is imputable to his principal, and if an insurance company, at the inception of the contract of insurance, has knowledge of facts which render the policy void at its option, and the company delivers the policy as a valid policy, it is estopped to assert such ground of forfeiture."

In *Pearlstine v. Phoenix Insurance Co.*, 74 S. C., 246; 54 S. E., 372, the Court said:

"The rule adopted in this State, and the large majority of the States of the Union, is that an insurance company cannot avail itself of provisions in the policy that it should be void if certain facts therein mentioned as essential to the issuance should be found not to exist, when these facts were known to the agent not to exist, when the policy was issued through him, and the existence of such facts, and the knowledge of the agent, may be proved by parol."

This exception is overruled.

The sixth exception is as follows:

"His Honor erred, it is respectfully submitted, in refusing to direct a verdict for the defendant herein because the evidence showed conclusively that there was no consideration for or delivery of the assignment (Exhibit 3) or policy from W. S. Rogers to J. P. Rogers, administrator, at the time this trial was commenced, and because the attempted assignment was a scheme to collect a claim otherwise unenforceable."

There is no merit in this exception. It appears from the record that at the trial it was agreed by all parties that the administrator of the estate of James A. Rogers should be substituted for W. S. Rogers as plaintiff in the case. If the assignment to W. S. Rogers was invalid, then the beneficiary of the policy was the estate of James A. Rogers. If the assignment to W. S. Rogers was valid, the policy was his to dispose of as he thought best, after the death of the insured, and he not only assigned and delivered the policy to the administrator, but under oath at the trial waived all claim to the proceeds of same, being thereby estopped from claiming any right or interest to or in the proceeds, whether there was any consideration for the assignment or not, although there was some testimony tending to show such consideration. In either event, especially in view of the agreement for the substituted plaintiff, the administrator was the proper party to prosecute the suit. The policy being valid, as we have already held, and all

possible claimants being before the Court, the insurance company is interested only in paying the proceeds of same as fixed and determined by the Court. This exception is overruled.

As to the specifications of error in charging the law: Under this topic we shall consider the third, fourth, fifth and seventh exceptions.

The fourth exception is as follows:

"His Honor erred, it is respectfullly submitted, in charging the jury as follows: 'I charge you further, if Tiller knew that Rogers had a growth on his cheek or face wherever it was, and he knew that there had been a surgical operation, if you consider that it was a surgical operation with reference to it, if Tiller knew that at the time he undertook to issue this insurance policy, acting for his company, if Tiller knew that, the company knew that, for notice to him was notice to the company. If they went on and issued that policy knowing these facts, that was a waiver of that defense set up here.'

"Because it was for the jury to say whether Tiller's knowledge amounted to a waiver by the defendant, and it was misleading, in that it led the jury to believe that Tiller's knowledge that insured had a growth on his face several months before he applied for insurance amounted to a waiver of the company's defense, even as to false answers concerning consultation and treatment by physicians, and because Tiller had a right to assume that the applicant had truthfully answered the questions in the application."

We cannot say that the charge of the trial Judge was misleading as complained of by the appellant. The appellant further contends that it was for the jury to say whether Tiller's knowledge amounted to a waiver by the defendant. It is true that ordinarily the question of waiver is for the jury, and it is the province of the jury to say whether the facts of the particular case constitute waiver. However when but one inference can be drawn from the facts, it is not

error for the Court to charge the jury that these facts constitute waiver. *Hollings v. Bankers' Union,* 63 S. C., 197; 41 S. E., 90. In the present case, the trial Judge submitted to the jury the question of fact, and charged them that if these facts were true they would constitute waiver. From the facts mentioned only one inference could be drawn. This exception is overruled.

The application for the policy provides that the answers to the questions in the application in part 1 and part 11 thereof are the only statements to be considered as the basis of the contract, and the policy contains this provision:

"This contract cannot be modified except by indorsement thereon signed by the officers authorized to sign this contract, and neither the agent soliciting the application nor any other representative, officer, or agent of the company, except those above mentiond, is authorized to make, modify, construe, waive the provisions of, or discharge this contract."

By the third and fifth exceptions the appellant complains that the charge of the trial Judge, generally, and with reference to the taking of the policy in favor of the estate of James A. Rogers and its subsequent assignment to W. S. Rogers, that notice to the agent was notice to the company, with the possibly resulting effect of waiver, under the testimony, was error on account of the provisions of the application and the policy above cited.

These exceptions cannot be sustained. The principle that notice to the agent is notice to the company, and that waiver may be made by the company through the agent, is too well established in the law of this State to need comment. If any authority is needed, reference may be had to the cases cited in our discussion of the first and second exceptions. When there is conflict between a provision of the policy and the law, the law must prevail.

The appellant complains by its seventh exception that the trial Judge erred in charging the jury that the administrator

of James A. Rogers was the proper person to bring the suit. What we have said in discussing the sixth exception applies here. These exceptions are overruled.

As to the specifications of error · in the admission of evidence: Under this head we shall group and consider together exceptions eight and nine, as they raise practically the same question. By these exceptions the appellant complains of error on the part of the Circuit Judge in allowing the plaintiff to introduce evidence tending to establish the fact of the assignment of the policy by W. S. Rogers to the administrator of the estate of James A. Rogers. What we have said in considering the sixth exception applies here, and these exceptions are accordingly overruled.

As to the specifications of error in refusing to charge certain of the defendant's requests to charge: Under this head we shall group and consider together exceptions 10, 11, 12, 13, and 14, as the nature of the questions raised by them is practically the same. These exceptions, in substance, complain of error on the part of the Circuit Judge in refusing to charge: (1) That neither the agent Tiller nor the physician, Dr. Allen, who examined the insured, had power to waive any of the legal rights acquired by the defendant under its contract; (2) that the answers to questions 6-B and 6-F must be held to be untrue, and were material in the issuance of the policy; and (3) that the jury should not consider as evidence either the testimony of W. S. Rogers or the agent Tiller as to statements made by W. S. Rogers to Tiller, the answers to questions in parts 1 and 11 of the application being the only facts to be considered as a basis of the contract. These exceptions cannot be sustained. What we have said in reference to exceptions one and two applies here. To have charged as requested would have been to charge on the facts as well as the law, and would have amounted to a direction of a verdict for the appellant. These requests to charge also ignore the duty of the Court, under the testimony in

the case, to submit to the jury the questions of waiver on the part of the company. The presiding Judge charged the law fully and correctly, and was as favorable to the defendant in his charge as the law could permit and the defendant could expect. Questions of fact, arising out of the testimony, were properly submitted to the jury for their determination, and we see no reason why the verdict of the jury should not stand.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS, COTHRAN and BLEASE concur.