13061

JULIEN v. STAR INSURANCE CO. OF AMERICA

(156 S. E., 865)

November, 1929.

314

*Messrs. Ashley C. Tobias, Jr.,* and *C. A. Mays,* for appellant,

*Messrs. W. H. Nicholson* and *R. F. Davis,* for respondent,

February 5, 1931.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action by C. T. Julien, as plaintiff, against the defendant, Star Insurance Company of America, commenced March 30, 1929, in the Court of Common Pleas for Greenwood County, is based upon a policy of insurance issued by the defendant in favor of the plaintiff, in the sum of $750, covering certain household furniture and chattels; the amount sued for being the full amount of the policy, together with interest from March 28, 1929. Issues being joined, the case was tried at the November, 1929, term of said Court, before his Honor, Judge M. M. Mann, and a jury. At the conclusion of the testimony introduced by the plaintiff, the defendant made a motion for a nonsuit, which

motion was refused. At the conclusion of all the testimony, the defendant made a motion for direction of a verdict, and this motion the Court also refused; whereupon the case was submitted to the jury, and a verdict was returned for the plaintiff for the full amount sued for. From the entry of judgment on the verdict, the defendant has appealed to this Court.

The appellant presents six exceptions. Under Exceptions 1, 2 and 3, error is imputed to the trial Judge in refusing the defendant's motion for a nonsuit, Exceptions 4 and 5 allege error in refusing the motion for direction of a verdict, and Exception 6 charges that the trial Judge erred in not charging defendant's request.

The questions raised because of the trial Judge's refusal to grant the motion for a nonsuit and the motion for the direction of a verdict will be considered together.

In its answer, the defendant admitted the issuance of the policy in question, but alleged further: "That among the various conditions and provisions contained in the policy contract it was expressly stipulated that the household goods and furniture of the plaintiff—as described in the policy of insurance—were to be covered only and while and during the time said household goods and furniture were located and contained in a certain house located on a certain street within the corporate limits of the City of Greenwood, South Carolina—as fully described in said policy. The answer further alleged that at the time of the fire—to wit: on the 26th day of January, 1929, the property covered had been removed, not only from the house described in the policy but had been transported from the City of Greenwood to Harleyville, South Carolina, without the knowledge or consent of the defendant company, or its agent, which amounted to a breach in the condition of the policy on the part of the plaintiff, and rendered the defendant in no way liable. The answer further alleged that the plaintiff had accepted and retained the policy of insurance, 'subject to all of the con-

ditions, provisions and stipulations, which had been violated, as hereinabove set forth.' "

The defendant's motion for a nonsuit was based upon the following grounds:

"1. That the plaintiff, by his testimony, has failed to make out his case, the uncontradicted testimony being that the policy contract required the property insured to be kept at a particular location, and at the time of the destruction of the property it was at some location other than that provided by the policy.

"2. The plaintiff has failed to make out his case because by his own testimony he recognized the necessity under the policy contract of the agent, knowing actually where the insured property was, and there is no testimony to show that at the time of the fire the agent of the defendant knew that it had been removed to Harleyville.

"3. The plaintiff has failed to make out his case because the testimony, even of the plaintiff himself, and in the light of the statement that he recognized the necessity under the contract of the agent knowing the exact location of the property, that the conversation with reference to the subsequent removal and subsequent notice of removal complied not only not with the terms of the policy, but didn't comply with the understanding which the plaintiff himself appreciated."

As stated in the transcript, the motion for direction of verdict was based upon substantially the same grounds that the motion for nonsuit was based.

The record discloses that the property covered by the policy was destroyed by fire at Harleyville, S. C., a short time after it was moved from Greenwood to that place, and that the plaintiff reported the loss to the agent of the defendant promptly after the loss occurred.

It is the contention of the plaintiff that the defendant, through its agent, not only had knowledge of the purpose and intention of the plaintiff to move the property in question from Greenwood, but consented for

this to be done. The testimony on behalf of the plaintiff pertinent to this phase of the case was as follows:

C. T. JULIEN, the plaintiff, testified:

"I live at North Augusta, and from May, 1927, until November, 1928, lived in Greenwood County. I left Greenwood the 15th of November. I had Seven Hundred and Fifty Dollars ($750.00) insurance on household goods with the Star Insurance Company. The policy was destroyed by fire on the 26th of January, 1929, the fire occurring at Harleyville. The policy was written in Greenwood, by Mr. Whitaker, of the Star Insurance Company.

"My property was originally insured on Edgefield Ave. I moved it to the home of my father-in-law on South Main Street. A few days later I saw Mr. Whitaker and told him I had moved my furniture from the place where it originally was insured, to the house of my father-in-law. Mr. Whitaker told me to come to his office and he would give me the difference in the rate between the two houses. I told him I would move my furniture again down the country, in a few weeks, and after I did that I would come to see him. He said, 'All right.'

"My policy had not expired when the fire occurred, and I got no return premium for the unearned part of the policy. When the loss occurred I notified Mr. Whitaker, and the company refused to pay it. The policy was written on February 23, 1928, for one (1) year. I received no papers of any kind prior to the fire. I lost about Two Thousand ($2,-000.00) Dollars worth of furniture and household goods."

On cross-examination, the plaintiff further on this line testified:

"Q. Now, when you moved your property to your father-in-law's home, which was in November, 1928, you went to Mr. Whitaker and told him about it? A. Yes, sir. I didn't make a trip to Mr. Whitaker's specifically, I saw him on the street and told him about it.

"Q. Where is the location to which you first moved your property? A. That is on South Main Street, it hasn't a number, it has been lately incorporated, it is about a mile from here.

"Q. Mr. Whitaker told you that having moved your property from No. 1118 Edgefield Ave. to your father-in-law's home, you had an improved risk and would be entitled to a return premium? A. Yes sir.

"Q. You told him that you might move again? A. Not that I might move again, but that I would move in a few weeks, because I had been transferred at that time.

"Q. You knew it was necessary under the terms of your policy, which contained a provision that your property was covered only while located in the property described in the policy, to notify the agent? A. I knew in a general way that the agent had to know where the furniture was. I considered when I told him that and he said 'all right', that that was all right."

On redirect examination, the plaintiff further testified, on this question, as follows: "When I spoke to Mr. Whitaker I told him I would wait until I had moved down the country and come back and adjust the whole matter, and he said it was all right. I told him I intended to move down the country in a few weeks, and that I would come back and see him then after I had moved. He said all right. After he told me that if I would come to his office he would give me a check for the difference in the rates, I told him I intended and would move down the country in a few weeks, and that I would come back and see him after I moved. I don't know that I mentioned it after I rented a house, that is what I meant after I moved in the house and could tell him what kind of a house that moved into, that I would come back and see him. He said 'all right.' "

The testimony of Mr. Whitaker, the agent of the defendant who wrote the policy in question and handled the entire transaction with the plaintiff, while not agreeing in detail

with the testimony of the plantiff, contains no denial of the conversation that took place, as testified to by the plaintiff, about the removal of the goods "down the country." On this point Mr. Whitaker testified, "I don't recall that he told me about moving, if he did, I don't say he didn't but I don't recall it."

Under our view of the law, the testimony to which we have called attention warranted the trial Judge in submitting the case to the jury on the question of waiver of the provision in the policy with reference to the location of the property in the house described in the policy. To say the least, the testmony pertinent to this issue was susceptible of the inference that the defendant had waived that condition in the policy, and through its authorized agent gave its consent for the removal of the property. While it is true, the agent of the defendant did not specifically state to the plaintiff, "You are given permission to move your goods to Harleyville"; yet, from what the agent did say, if plaintiff's testimony is to be believed, and from the way he acted, the plaintiff was led to believe that it was agreeable with the defendant to move the property and that the policy would continue of full force and effect after such removal. From the testimony it may be reasonably inferred, also, that it would be agreeable not to make a further report to the said agent concerning the removal of the property until after its removal and location, and, even then, simply for the purpose of getting the rate of premium fixed. The rule is that, though no one of the facts on which evidence was introduced be sufficient within itself to warrant an inference of waiver, still if, when all of the facts involved taken together tend to establish that result, then under such circumstances it becomes the duty of the trial Judge to submit the question to the jury; and we think his Honor committed no error in submitting the case to the jury. In our opinion the testimony fully warranted such action. In this connection attention is called to the following cases: *Rowell v. Ins. Co.,* 142 S. C.,

457; 141 S. E., 20; *Rogers v. Insurance Co.,* 135 S. C., 89; 133 S. E., 215; 45 A. L. R., 1172; *Allen v. Insurance Co.,* 139 S. C., 41; 137 S. E., 214; *Hollings v. Bankers' Union,* 63 S. C., 192; 41 S. E., 90.

Under the sixth exception, error is imputed to the trial Judge as follows: "That his Honor, the presiding Judge, *erred in refusing to charge the request* orally made by Defendant's counsel at the conclusion of his general charge, the error being that the Court qualified the charge by stating that the insured had a reasonable time to give Notice of removal, whereas, the Policy contract provided that the Defendant must know where the insured property was at all times."

The request referred to in the exception was a verbal request made by counsel for defendant at the close of the trial Judge's charge, in the following language: "Mr. Tobias: I would like you to charge the jury, that if the plaintiff understood that the agent had to know the exact place where the property was, and the agent didn't know actually where the property was at the time of the fire, then Company wouldn't be liable."

In addition to what had already been charged by the trial Judge, his Honor added: "That as a general proposition of law is correct. I can't tell you that he did know, because that is a question of fact for you. I submit that to you as a proposition of law."

His Honor further charged the jury at that time as follows: "That reminds me of a matter that I intended to bring to your attention. If there was a removal of property from the place in which it was insured to a place other than the place in which it was originally insured, if the plaintiff acted as a man of ordinary business judgment, prudence and intelligence in that circumstance, or a person of ordinary business prudence and intelligence would have acted that way he would have a reasonable time from the same removal to give the Insurance Company notice of change, *if in the first in-*

*stance the Insurance Company was put on notice that there might be a change or would be a change and waived its right under that provision of the policy.* What is a reasonable time varies according to the facts and circumstances of the case. What might be a reasonable time in one case might not be in another case, what might be reasonable in one case might be unreasonable in another. Each circumstance on which a right of recovery is predicated has to be measured by its own relationship to that case." (Italics added.)

The use of this language by the trial Judge is another ground of error charged under this exception. But we find no ground for complaint. By the use of the words we have put in italics, his Honor made the proposition clear, and, when this part of the charge is considered in connection with the whole charge, we are satisfied that the defendant has no just ground for complaint. We think that the language complained of was responsive to the testimony.

The exceptions are overruled and the judgment affirmed.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE STABLER and MR. ACTING ASSOCIATE JUSTICE SMITH concur.

MR. JUSTICE COTHRAN dissents.

MR. CHIEF JUSTICE BLEASE (concurring):

I concur in the opinion of MR. JUSTICE CARTER. The plaintiff testified that he said to the agent of the insurance company: "I told him I would move my furniture again—down the country, in a few weeks, and after I did that I would come to see him. He said 'All right.'" The agent, Mr. Whitaker, with whose fairness I am much impressed, in his testimony regarding this conversation with the plaintiff, said, 'I don't recall that he told me about moving, if he did, I don't say he didn't, but I don't recall it." The evident purpose of Mr. Whitaker to assist one of his customers perhaps caused the plaintiff to rest content as to his insurance. Under our rule, commonly called "the scintilla of evidence rule," I think the Judge was right in sending the case to the jury for determination. See *Hughes v. Palatine Insurance*

*Co.*, 130 S. C., 383; 126 S. E., 125, and particularly the concurring opinion of Hon. P. F. Henderson, Acting Associate Justice.

MR. JUSTICE STABLER concurs.

MR. JUSTICE COTHRAN (dissenting).

This is an action commenced March 30, 1929, upon a policy of insurance, issued February 23, 1928, for $750, expiring one year thereafter, covering household furniture and chattels, "only while contained" in a certain dwelling house, occupied by the insured as a tenant, on the west side of Edgefield Street in the City of Greenwood.

It appears that the insured moved his goods from the house on Edgefield Street to the home of his father-in-law, located on South Main Street, in the City of Greenwood, in November, 1928, without notice to or permission of the company. A few days thereafter the insured casually met the agent of the company on the streets of Greenwood and notified him of the move he had made. The agent told him that the premium at the house to which he had moved was less than that at the former location, and that, if he would call at the office, an adjustment of the premium would be made. The insured, as he testified, which is assumed to be true, notified the agent that he expected to move "down the country, in a few weeks," and that, when he did so, he would call and "tell him where the property was" and make an adjustment of the rate, to which the agent replied "all right," and immediately, as he says, wrote out a removal permit from the house on Edgefield Street to the father-in-law's house on Main Street. It does not appear that the agent delivered this permit to the insured, but it seems that he attached it to the policy, original or copy, in his possession.

The insured left Greenwood on January 10, 1929, moving his goods to Harleyville, some 150 to 200 miles from Greenwood, and established his home there. He made no report to the company, which appears to have been ignorant of his

movements or of the character of the building in which the goods were placed.

On January 26th, more than two weeks later, the dwelling house occupied by the insured in Harleyville was destroyed by fire, and the household goods claimed to be insured went up in smoke.

Neither the insured nor his counsel denies the manifestly correct propositions that the location of the property insured was a material element in the policy contract; that it originally covered the property only while contained in the house on Edgefield Street. I think that there can be no doubt, from the fact, that after the removal to the house on Main Street, and the execution of a removal permit from one house to the other, by the agent who attached it to the policy, the policy covered the property while in the house on Main Street. The pivotal question is whether there is enough in the conversation between the insured and the agent, at the time the insured notified the agent of his first removal, from which it could possibly be inferred that the company, through the agent, intended to waive the material condition that the property was not to be considered as covered by the policy unless it was at the time of the fire contained in the building described in the policy or in one to which permission to move it had been granted.

The contention of the plaintiff cannot be that the agent intended to waive this condition of the policy, for his testimony only tends to establish an agreement that, after the insured moved out of the Main Street house, within an indefinitely stated time, to an indefinitely stated place, and moved into an unascertained and undescribed house, the removal permit would be issued—an agreement without consideration and as indefinite as could well be conceived.

Surely, until the agent had been informed of the location, character, and hazards of the Harleyville house, he was not bound to allow the insured the privilege he had allowed him

in reference to the removal from the Edgefield Street house to the Main Street house in Greenwood.

For these reasons I think that the judgment should be reversed.