16297

MICKLE v. DIXIE SECURITY LIFE INS. CO.

(57 S. E. (2d) 73)

*Messrs. Lee & Moise,* of Sumter, and *John K. DeLoach and William M. Wilson, Jr.,* of Camden, *for Appellant,*

*Messrs. Murchison & West and J. D. Montgomery,* of Camden, *for Respondent,*

*Messrs. Lee & Moise,* of Sumter, *and John K. DeLoach and William M. Wilson, Jr.,* of Camden, *for Appellant,*

December 16, 1949.

FISHBURNE, Justice.

This action was brought to recover the sum of Five Hundred Dollars alleged to be due the plaintiff as beneficiary under a policy of insurance issued by the defendant, Dixie Security Life Insurance Company, upon the life of her husband, William M. Mickle.

The defendant, by its answer, set up the defense of fraud on the part of the insured, alleging that in the application for the insurance he had falsely and fraudulently answered certain questions with reference to the state of his health; and that by his false and fraudulent answers he had misled and deceived the company into issuing the policy on his life. It

was further alleged by way of defense that the insurance policy contained the following provision: "This policy shall take effect on the date of issue, provided the insured is then alive and in sound health, but not otherwise;" and that, upon information and belief, the insured was not in sound health on the date of issue, and therefore the insurance never became effective.

Upon the trial of the case, at the close of the testimony, the defendant moved for a directed verdict, which was refused. The motion was based upon the ground that the evidence sustained and established the defenses above set forth. The case was submitted to the jury, and a verdict rendered for the plaintiff in the sum of Five Hundred Dollars.

The appellant prosecutes this appeal upon two grounds: (a) Were the answers to the questions in the application fraudulent so as to constitute warranties as expressed by the contract of insurance, or were they representations; and in either event did they void the policy? (b) Was respondent's husband in sound health on May 17, 1948, the date of the issuance of the policy?

The record discloses that respondent, the wife of the insured, resides at Camden, and is Night Supervisor at the Camden Hospital. She is a registered nurse, and was married to the insured on September 16, 1941. The life insurance policy in question was applied for by insured on May 3, 1948; it was issued on May 17, 1948, and delivered to respondent the next day, May 18, 1948, by appellant's local agent, two or three hours after the death of the insured, who died of a heart attack superinduced by alcoholism.

Replying to the questions contained in the application of date May 3, 1948, which was two weeks prior to his death, the insured stated that he was in good health; had never had any illnesses, injuries or operations; had never been refused inurance in this or any other company; had never had certain named diseases, —— none of which are relevant here;

nor had he ever suffered from any mental or physical infirmities.

It may reasonably be inferred from the testimony of all of the witnesses, including that of his wife, the respondent, that he had been a periodic inebriate for years, and had been treated for what is described as "hangovers."

Respondent testified that during the year prior to the issuance of the policy, the insured drank very little, but before that he had been a heavy drinker, and that at one time they had separated on account of his excessive drinking, but became reunited in June, 1947. She said that subsequent to the latter date, he drank to excess only twice: once during Christmas, 1947, and again shortly before his death. He was incapacitated from drink one or two days preceding his death —— that is, on May 15 and May 16, —— but was not confined to his bed until the 17th, on which day he unexpectedly died. The respondent testified that her husband had been drinking prior to and during all of this period, and that usually it took him about two weeks to recover from one of his drinking spells.

Mrs. Mickle stated that her husband and the soliciting agent, Mr. Anderson, had known each other for years, and were old friends; that they had worked together at Oak Ridge Atomic Bomb Plant (in Tennessee), and saw each other afterwards in Camden; that Mr. Anderson and the insured drank together sometimes, and that he knew that the insured had been treated by a doctor for hangovers.

The insured was in the Camden Hospital for two days in December, 1947; he had a pain in his abdomen, and his attending physician, Dr. Shaw, had him under observation to determine whether the pain was caused by appendicitis or whether it was due to his drinking. Dr. Shaw testified that after checking his blood count and general condition, he felt that there was some evidence of appendicitis, and that perhaps an operation was advisable. However, no operation was performed because the insured said he was feeling better,

and would not agree to an operation. There is no evidence that the abdominal pain ever recurred, and Dr. Shaw never saw him again.

Dr. Brunson, a witness for appellant, had known the insured for years, but had not seen him recently before his death. The respondent told Dr. Brunson three days before the death of her husband, of his alcoholic condition, and the doctor prescribed sedative capsules. Dr. Brunson signed the physician's Statement, give the cause of death as "Heart failure —— type not determined," and as a contributary or secondary cause, "Died suddenly during sleep —— alcoholism." The doctor testified, "I would not say that a person in that condition was in good health. I know that Billie (the insured) had had several episodes of drinking and I think it was generally known that he was a periodic alcoholic." And he further stated that doctors now classify alcoholism as a disease. However, Dr. Brunson on cross examination, qualified his opinion by stating that the insured had no symptoms that would indicate that he was about to have heart failure when he died; and he testified: "A man can be in sound health and have a hangover. There is nothing organically wrong with a man having a hangover. If Billie had been drinking only twice during a period of a year, it would depend on how much he drank as to whether he was an alcoholic."

A warranty in the law of insurance, is an undertaking on the part of the insured, appearing in the policy of insurance or in another instrument properly incorporated in the policy, relating contractually to the risk insured against. To be considered as such, the warranty must appear on the face of the policy; or if in another part of it, it must appear that the statements were intended to form a part of the policy. *Kiser v. Woodmen of the World*, 177 S. C. 70, 180 S. E. 804; 29 Am. Jur., Sec. 529, Pages 426, 427.

The answers given by the insured on the application ■ for insurance were in no way incorporated in the policy nor was any reference made therein to the application; so that it follows that these answers were merely representations, and that in order to void the policy it must be shown that they were fraudulent.

As was said in *Johnson v. New York Life Ins. Co.*, 165 S. C. 494, 164 S. E. 175, 176: "Where a statement of fact in an application is only a representation, its mere falsity is not sufficient to avoid the policy, its materiality and the good faith of the applicant in making it being important considerations. Under the issues made in the case at bar, it would be necessary for the defendant to show that the statements in the application relied on to defeat the policy were untrue, that their falsity was known to the applicant, that they were material to the risk and relied on by the insurer, and that they were made with intent to deceive and defraud the company." To the same effect is *Metropolitan Life Ins. Co. v. Bates*, 213 S. C. 269, 49 S. E. (2d) 201.

It will be noted that none of the questions in the application deal with drinking or excessive drinking, nor was any question asked as to when, if ever, the applicant had consulted a physician for any cause; and it may well be that the applicant did not regard periodic drinking as a disease or an infirmity, and did not intend to perpetrate any fraud on the insurance company.

In the case of *Johnson v. New York Life Ins. Co.*, 165 S. C. 494, 164 S. E. 175, the insured had been treated by physicians for alcoholism on ten different occasions, with periods of illness of from one to four weeks, on one of which he was confined to a hospital. And it was concluded that under the evidence the applicant was obliged to know that his answers in the application were false, that the matters concerned were material to the risk, and were relied upon by the insurer.

But the facts in *Johnson v. New York Life Ins. Co., supra,* are substantially different from those in the case at bar. In that case the application signed by the insured contained questions directly concerning whiskey and the use of whiskey. For instance, the applicant was asked:

"Q. How frequently, if at all, and in what quantity do you drink beer, wine, spirits, or other intoxicants?

"Q. How frequently, if at all, and in what quantity have you drunk any of them in the past?

"Q. Have you within the last five years (drunk) any of them to excess?"

The question was also asked as to whether or not the applicant had ever consulted a physician or practitioner for any ailment or disease.

As already observed, none of the foregoing questions were contained in the application signed by the insured. in this case; and in our opinion it was for the jury to pass upon the question of fraud and materiality.

However, aside from this, it can reasonably be inferred that the appellant's local insurance agent, Mr. Anderson, was through close association, fully aware that the insured sometimes drank to excess. He drank with him, knew he had been treated several times for alcoholism, and knew its probable effect upon the state of his health.

It has uniformly been held in this State that the knowledge of an agent acquired within the scope of his agency is imputable to his principal, and, if an insurance company, at the inception of the contract of insurance, has knowledge of facts which render the policy void at its option, and the company delivers the policy as a valid policy, it is estopped to assert such grounds of forfeiture. *Able v. Pilot Life Ins. Co.,* 186 S. C. 26, 194 S. E. 628; and see the many supporting cases cited in this opinion.

Furthermore, the appellant did not offer its local agent, Mr. Anderson, who delivered the policy, as a witness in this

case. Nor does the Insurance Company charge that any fraud or collusion existed between Anderson and the insured.

It is well settled that if a party fails to produce the testimony of an available witness on a material issue in the case, it may be inferred that his testimony, if presented, would be adverse to the party who fails to call the witness; as where there is a failure to call an almost indispensable witness to the transaction giving rise to the controversy. *Robinson v. Duke Power Co.,* 213 S. C. 185, 48 S. E. (2d) 808; *Gaskins v. Firemen's Ins. Co.,* 206 S. C. 213, 33 S. E. (2d) 498; *Wingate v. Postal Telegraph & Cable Co.,* 204 S. C. 520, 30 S. E. (2d) 307.

Upon a consideration of the evidence in this record, it may reasonably be inferred that if alcoholism be a disease, and that it adversely affected the health of the insured, then appellant's local agent was fully conversant with the situation, and such knowledge is imputable to his principal.

On another phase of the case, there was evidence tending to show that an application for insurance made by the insured to the Liberty Life Insurance Company had been rejected, but there is no evidence that the deceased was ever informed of this rejection. The testimony of the official of the Liberty Life Insurance Company on this point is merely to the effect that this company did not issue a policy in accordance with the application because it did not receive a physical examination report.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

BAKER, C. J., and STUKES, TAYLOR, and OXNER, JJ., concur.