**Millon ARANT, Plaintiff,**

v.

**MUTUAL BENEFIT HEALTH AND AC-CIDENT ASSOCIATION, Defendant.**

**Civ. A. No. 5418.**

United States District Court
E. D. South Carolina,
Florence Division.
March 27, 1957.

J. A. Spruill, Jr., Cheraw, S. C., for plaintiff.

R. B. Herbert, Jr., Columbia, S. C., for defendant.

WYCHE, District Judge.

In compliance with Rule 52(a), Rules of Civil Procedure, 28 U.S.C.A., I find the facts specifically and state my conclusions of law thereon as follows:

Findings of Fact

1. The plaintiff is a business man and farmer residing at Pageland, Chesterfield County, South Carolina.

2. The defendant is a foreign corporation incorporated under the laws of

the State of Nebraska and maintaining officers, agents and places of business in South Carolina.

3. In September, 1954, the plaintiff suffered from chest pains and his blood pressure ran up above normal. His family physician Dr. D. C. Griggs of Pageland, South Carolina, sent him to a hospital in Charlotte, North Carolina, for observation and diagnosis.

4. The plaintiff was hospitalized for one week in Charlotte and 600 ccs of blood were withdrawn from him. At the end of the week he was sent home. The tentative diagnosis communicated to his family physician was: "Premonitory coronary insufficiency and Polycythemia".

5. The tentative diagnosis was not communicated to the plaintiff. Neither was it confirmed by subsequent examination, nor followed by customary treatment. The plaintiff was restricted to his home for only one week and then allowed to resume his customary activities. His resumption of activities was at first on a limited basis, but these limitations were soon relaxed and he resumed work on a full schedule as before his hospitalization.

6. In November, 1954, an agent of defendant approached the plaintiff at his place of business and solicited his application for a policy of health and accident insurance.

7. The plaintiff told the agent of the defendant that he had been in a hospital for treatment for what he thought was "too much blood". Substantially the same information was given to the agent by one of the plaintiff's brothers immediately before the agent's interview with the plaintiff.

8. The agent stated that he could write a policy to cover plaintiff and the agent filled out an application which was signed by plaintiff.

9. The application filled out by the agent and signed by the plaintiff contained the following questions and answers:

"13. To the best of your knowledge are you sound physically and mentally? Answer to each: Yes."

"14. To the best of your knowledge have you ever had any of the following disorders: * * * (d) Heart disease, high or low blood pressure, any disorder of the circulatory system? Answer: No."

10. In view of the testimony of Dr. D. C. Griggs it appears that the answers to the above questions may have been correct. However, if any one of them was incorrect the plaintiff was innocent of any fraud and did not knowingly make a misrepresentation with the intent to deceive or defraud the defendant.

11. The agent of the defendant, acting in the course and scope of his employment, had knowledge when he filled out the application for the insurance that the plaintiff had had to have blood removed and that he had been recently hospitalized, but he negligently or inadvertently failed to insert this information in the application.

12. The defendant's agent in filling in the application incorrectly or incompletely did not intend to perpetrate a fraud on his principal.

13. The plaintiff did not read the application but assumed that the agent had inserted the information he gave to the agent.

14. On or about November 19, 1954, the defendant issued to the plaintiff its Health and Accident Insurance Policy #480524–54M, the plaintiff paying premium in advance to December 1, 1955, in the amount of One Hundred Twelve ($112.00) Dollars.

15. The plaintiff is at present an insurable risk.

16. On or about September 2, 1955, defendant sought to rescind the said policy on the grounds of fraudulent representation and tendered plaintiff its check for One Hundred Twelve ($112.00) Dollars, as a refund of his initial premium.

17. The plaintiff returned the refund checks to the defendant and tendered to

the defendant a certified check for One Hundred Two ($102.00) Dollars, in payment of the renewal premium for the year to begin December 1, 1955. The defendant returned both of these checks to the plaintiff.

18. The plaintiff thereupon brought suit for a declaratory judgment that the policy was in full force and effect and defendant sought as an affirmative defense to rescind the contract of insurance on the grounds of fraudulent misrepresentation.

19. The plaintiff's good faith is fully established and the defendant has failed to prove its affirmative defense.

20. The plaintiff is entitled to a declaratory judgment to the effect that his policy #480524-54M is in full force and effect and binding upon the defendant with the plaintiff having a reasonable time in which to tender back defendant's refund check and to retender the premium due December 1, 1955, and to tender the premium which came due on December 1, 1956, and after the bringing of this action.

## Conclusions of Law

1. The defendant in order to rescind the insurance contract issued to the plaintiff on the ground of misrepresentation in the application must establish, (1) the falsity of the representation; (2) plaintiff's knowledge of its falsity; (3) the materiality of the fact represented; (4) defendant's reliance on the representation, and (5) plaintiff's intent to deceive and defraud.

In Pilot Life Insurance Co. v. Pulliam Motor Co., 4 Cir., 229 F.2d 912, the United States Court of Appeals for the Fourth Circuit recognized the laws of South Carolina to be as stated in Lipsey v. Life Insurance Co. of Georgia, 221 S.C. 291, 70 S.E.2d 349, 351. There the rule as to avoidance of obligation by the insurer for misrepresentation in an application for insurance is stated as follows [229 F.2d 916]: "It is sufficient to say that it is incumbent upon the insurer to show not only that the statements complained of were untrue but, in addi-

tion, 'that their falsity was known to the applicant, that they were material to the risk and relied on by the insurer, and that they were made with intent to deceive and defraud the company.' Johnson v. New York Life Insurance Co., 165 S.C. 494, 164 S.E. 175, 176."

The South Carolina law is stated to the same effect in Mickle v. Dixie Security Life Ins. Co., 216 S.C. 168, 57 S.E. 2d 73, 75: "As was said in Johnson v. New York Life Ins. Co., 165 S.C. 494, 164 S.E. 175, 176: 'Where a statement of fact in an application is only a representation, its mere falsity is not sufficient to avoid the policy, its materiality and the good faith of the applicant in making it being important considerations. Under the issues made in the case at bar, it would be necessary for the defendant to show that the statements in the application relied on to defeat the policy were untrue, that their falsity was known to the applicant, that they were material to the risk and relied on by the insurer, and that they were made with intent to deceive and defraud the company.' To the same effect is Metropolitan Life Ins. Co. v. Bates, 213 S.C. 269, 49 S.E.2d 201."

2. Proof of fraud must be clear and convincing. Wingo v. New York Life Ins. Co., 155 S.C. 206, 101 S.E. 653, 656. The defendant having the burden of proof on the issue, failed to establish fraud by clear and convincing evidence. The record evidences the good faith and absence of fraud on the part of the plaintiff.

3. When the defendant's agent, acting in the course of his employment, wrote plaintiff's application he knew substantially as much about plaintiff's health and condition as did the plaintiff himself. The defendant, with its agent having this knowledge, and such knowledge being imputed to it, issued its policy when it could have inquired as to the full meaning of the hospitalization of the plaintiff and the drawing of his blood. Having issued the policy, the defendant has waived its rights to insist on the forfeiture of plaintiff's policy on the

ground that the answers in the application are inconsistent with existing facts known to its agent.

In Rogers v. Atlantic Life Insurance Co., 135 S.C. 89, 133 S.E. 215, 220, 45 A. L.R. 1172, the Court said: "If Tiller, the general agent of the company, knew or was told before the insurance was issued that a bump or tumor had been removed from the face of James A. Rogers, his knowledge of these facts was imputed to the insurance company, and the question of waiver on the part of the company was properly submitted to the jury. In Fludd v. [Equitable Life] Assurance Society, 75 S.C. 315, 55 S.E. 762, the Court held: 'The knowledge of an agent acquired within the scope of his agency is imputable to his principal, and if an insurance company, at the inception of the contract of insurance, has knowledge of facts which render the policy void at its option, and the company delivers the policy as a valid policy, it is estopped to assert such ground of forfeiture.'" See also, Gandy v. Orient Insurance Co., 52 S.C. 224, 228, 29 S.E. 655.

In Mickle v. Dixie Security Life Ins. Co., supra, 216 S.C. 168, 57 S.E.2d 73, one question involved was as to the effect of untrue representation as to the insured's use of alcohol. The Court said: "As already observed, none of the foregoing questions were contained in the application signed by the insured in this case; and in our opinion it was for the jury to pass upon the question of fraud and materiality. However, aside from this, it can reasonably be inferred that the appellant's local insurance agent, Mr. Anderson, was through close association, fully aware that the insured sometimes drank to excess. He drank with him, knew he had been treated several times for alcoholism, and knew its probable effect upon the state of his health.

"It has uniformly been held in this State that the knowledge of an agent acquired within the scope of his agency is imputable to his principal, and, if an insurance company, at the inception of the contract of insurance, has knowledge of facts which render the policy void at its option, and the company delivers the policy as a valid policy, it is estopped to assert such grounds of forfeiture. Able v. Pilot Life Ins. Co., 186 S.C. 26, 194 S.E. 628; and see the many supporting cases cited in this opinion."

4. The plaintiff is entitled to a declaratory judgment to the effect that his policy #480524–54M is in full force and effect and binding upon the defendant with the plaintiff having a reasonable time in which to tender back defendant's refund check and to retender the premium due December 1, 1955, and to tender the premium which came due on December 1, 1956, and after the bringing of this action, and

It is so ordered.

It Is Further Ordered, that the plaintiff shall have twenty (20) days from the date of this Order in which to tender back defendant's refund check and to retender the premium due December 1, 1955, and to tender the premium which came due on December 1, 1956, after the commencement of this action.